**2026-1893**

# United States Court of Appeals for the Federal Circuit

COLLISION COMMUNICATIONS, INC.,

*Plaintiff-Appellant,*

– v. –

SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the Eastern District of Texas in No. 2:23-CV-00587-JRG, Honorable J. Rodney Gilstrap, Judge*

**BRIEF OF *AMICUS CURIAE* INTERDIGITAL, INC. IN SUPPORT OF APPELLANT AND IN SUPPORT OF REVERSAL**

STEPHEN J. AKERLEY
ANDREW H. DEVOOGD
INTERDIGITAL, INC.
200 Bellevue Parkway, Suite 3500
Wilmington, Delaware 19809
(302) 281-3600
steve.akerley@interdigital.com
drew.devoogd@interdigital.com

MICHAEL C. NEWMAN
JAMES M. WODARSKI
PETER J. CUOMO
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
mcnewman@mintz.com
jwodarski@mintz.com
pjcuomo@mintz.com

*Counsel for Amicus Curiae InterDigital, Inc.*

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (394982)

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2026-1893

**Short Case Caption** Collision Communications, Inc. v. Samsung Electronics Co

**Filing Party/Entity** InterDigital, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/10/2026

Signature: /s/ Michael Newman

Name: Michael Newman

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| InterDigital, Inc. | | BlackRock, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**


**CERTIFICATE OF INTEREST** ............ i

I. **STATEMENT OF INTEREST OF THE AMICUS CURIAE** ............ 1

II. **SUMMARY OF ARGUMENT** ............ 2

III. **ARGUMENT** ............ 6

A. *eBay* Reaffirmed the Traditional Principles of Equity and a Century of Jurisprudence. ............ 6

1. *eBay* Reaffirmed a Century-Old Right to Injunctions for Non-Practicing Patent Holders. ............ 7

2. Nothing in *eBay* Altered Traditional Equitable Principles or Their Associated Legal Conclusions ............ 13

3. Justice Kennedy's Non-Binding Concurrence Is a Minority View Historically Expressed in Dissents. ............ 17

B. The Misapplication of *eBay* Has Fundamentally Changed Patent Rights and Enforcement. ............ 19

C. The Misapplication of *eBay* Has Exacerbated the Costs and Complexity of Patent Litigation by Fostering Parallel Proceedings Overseas. ............ 23

D. The Misapplication of *eBay* Has Devalued Patents as Property and Incentivized Predatory Infringement. ............ 27

IV. **CONCLUSION** ............ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989)....................2, 26

*Cont'l Paper Bag Co. v. E. Paper Bag Co.*,
210 U.S. 405 (1908)....................3, 8, 9, 11, 17

*Dawson Chemical Co. v. Rohm & Haas Co.*,
448 U.S. 176 (1980)....................11, 25

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013)....................27

*eBay Inc. v. MercExchange, L.L.C.*,
546 U.S. 1029 (2005)....................8

*eBay v. MercExchange*, *L.L.C.*,
547 U.S. 388 (2006)....................*passim*

*Hartford-Empire Co. v. United States*,
323 U.S. 386 (1945)....................12

*Md. v. Wilson*,
519 U.S. 408 (1997)....................17

*MercExchange, L.L.C. v. eBay, Inc.*,
275 F. Supp. 2d 695 (E.D. Va. 2003)....................6, 7, 13

*MercExchange*, *L.L.C. v. eBay*, *Inc.*,
401 F.3d 1323 (Fed. Cir. 2005)....................*passim*

*MercExchange, L.L.C. v. eBay, Inc.*,
500 F. Supp. 2d 556 (E.D. Va. 2007)....................20

*Nutrition 21 v. United States*,
930 F.2d 867 (Fed. Cir. 1991)....................14

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)....................14, 15, 16

*Smith Int'l, Inc. v. Hughes Tool Co.*,
718 F.2d 1573 (Fed. Cir. 1983) ........................................................*passim*

*Socket Sols., LLC v. Import Global, LLC*,
No. 2025-1121 (Fed. Cir. Aug. 4, 2026) ..................................................14

*Special Equipment Co. v. Coe*,
324 U.S. 370 (1945)..........................................................11, 12, 18, 20

*Trump v. CASA*,
606 U.S. 831 (2025).....................................................................4, 15, 27

**Statutes and Rules**

35 U.S.C. § 154(a)(1)...........................................................................2, 10

Judiciary Act of 1789 ...............................................................................15

Patent Act .............................................................................................2, 10, 26

**Other Authorities**

Adam Mossoff, *The Injunction Function: How and Why Courts Secure Property Rights in Patents*, 96 Notre Dame L. Rev. (2021) ......27, 28, 29

H. Tomás Gómez-Arostegui & Sean Bottomley*, The Traditional Burdens for Final Injunctions in Patent Cases c.1789 and Some Modern Implications,* (2020) ..............................................................15

Kirti Gupta et al., *Intellectual Property Litigation: U.S. Trends in Global Perspective* (Cornerstone Research, June 2026) ........................22, 23, 26

Kristen Jakobsen Osenga, *"Efficient" Infringement and Other Lies*, 52 Seton Hall L. Rev. (2022).................................................................29

Lybecker, *Injunctive Relief in Patent Cases: The Impact of eBay*, 38 Harv. J.L. & Tech. (2024)..................................................21, 22, 28

Christopher B. Seaman, *Permanent Injunctions in Patent Litigation After eBay: An Empirical Study*, 101 Iowa L. Rev. (2016)...............................25

Ryan T. Holte, *The Misinterpretation of eBay v. MercExchange and Why: An Analysis of the Case History, Precedent, and Parties*, 18 Chap. L. Rev. (2015) ............................................................19, 21

U.S. Const., Art. I, § 8, cl. 8 .......................................................................... 10

Univ. Tech. Managers, *AUTM 2020 Licensing Activity Survey* 4, https://autm.net/surveys-and-tools/surveys/licensing-survey/2020-licensing-survey (last visited Aug. 10, 2026) ..................................................... 30

## I. STATEMENT OF INTEREST OF THE AMICUS CURIAE

InterDigital, Inc. is a publicly traded Pennsylvania corporation, founded in 1972 with the objective of developing new and innovative wireless technologies. In the intervening five decades, InterDigital has been a pioneer in mobile communication and other advanced technologies. At the end of 2025, InterDigital had approximately 460 employees, roughly half of whom are engineers. Around 90% of these engineers hold advanced degrees—over 100 with Ph.D.s from the world's leading institutions—and a similar percentage are named inventors on at least one issued patent.

InterDigital has been a prominent and consistent contributor to numerous global standards, including wireless connectivity techniques that form the backbone of modern commerce, communication, and entertainment. InterDigital's inventions are protected by a portfolio of approximately 40,000 patents and patent applications. The vast majority of InterDigital's patents protect technology that the company created. For example, approximately 95% of its cellular and wireless inventions were developed in-house by InterDigital engineers.

Because InterDigital does not manufacture products, to fund its R&D work the company provides access to its proprietary technology through patent licensing. Throughout InterDigital's decades of experience in licensing, litigation has sometimes been necessary against intransigent infringers. Beyond seeking to protect

InterDigital's patent rights, this litigation also seeks to protect the rights of InterDigital's existing licensees who have paid to use its technology—but are at a disadvantage in the market when their competitors free ride without paying for such use. This experience gives InterDigital a unique perspective on the issues raised in this appeal.[1]

## II. SUMMARY OF ARGUMENT

Over the two decades since *eBay*, the decision has too often been misunderstood to change substantially more than the Supreme Court holding justifies. The majority in *eBay* emphasized that it was *not* announcing any new body of patent law or departing from settled equitable principles regarding patent injunctions. *eBay v. MercExchange*, *L.L.C.,* 547 U.S. 388, 391 (2006).

This continuity is important. The Patent Act reflects a "careful balance" struck by Congress between inventors and the public. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146-47 (1989). In exchange for disclosing new and useful inventions to the public, Congress gives inventors a time-limited right of exclusivity that is designed (i) to offer a return on investment in invention and (ii) to incentivize yet more investment in future innovation. *See id.*; 35 U.S.C. § 154(a)(1). The

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *Amici* state that no counsel for a party authored this brief in whole or in part, and that no person other than *Amici* or their counsel contributed money that was intended to fund preparing or submitting the brief.

fulcrum of that bargain is the patent holder's right to exclude others from practicing the invention—a right repeatedly recognized by Congress and the Supreme Court as *the* defining feature of the patent grant.

The Supreme Court in *eBay* reaffirmed the longstanding principle that the right to exclude does not depend upon whether a patent owner practices the invention. In rejecting the district court's categorical denial of injunctive relief to a licensing-focused patent owner, the Court relied expressly upon *Cont'l Paper Bag Co. v. E. Paper Bag Co.*, 210 U.S. 405 (1908). In that case, the Supreme Court held that a patentee "is neither bound to use his discovery himself [n]or permit others to use it" and that the right to exclude others from the protected invention is "***the very essence*** of the right conferred by the patent." *Id.* at 425, 429 (emphasis added). Far from diminishing the inherently exclusionary nature of patent rights, *eBay* reiterated over a century of precedent recognizing that patent ownership necessarily includes the fundamental right to decide whether an invention will be practiced, licensed, or withheld from use altogether.

*eBay* did not deviate from these established principles; it merely directed lower courts to apply the same traditional equitable doctrine that has governed requests for injunctive relief for generations. *eBay*, 547 U.S. at 391 (to obtain a permanent injunction, a "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."). *eBay* was not a sea change.

This proper reading of *eBay* is confirmed by the Supreme Court's recent guidance in *Trump v. CASA*, 606 U.S. 831, 841 (2025). That case instructed that traditional equitable principles invoke "those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception," and, importantly, that *any* change to these equitable principles is *not* within the province of the courts. *Id*. at 837. This takes the Supreme Court's primary guidance in *eBay* a step further: that "a major departure from the long tradition of equity practice should not be lightly implied." *eBay Inc.*, 547 U.S. at 391-392.

But in the two decades since *eBay*, "a major departure" from traditional equitable principles—without Congressional authorization—is precisely what has happened. *Id.* As lower courts have construed *eBay* to make injunctive relief more difficult to obtain for patent owners who choose to license their inventions, the center of gravity for high-value patent enforcement has shifted away from the United States and towards jurisdictions that still offer meaningful exclusionary remedies. The pan-European Unified Patent Court and courts in Germany and Brazil, for example, have emerged as leading venues for global patent disputes, in no small part because they

provide greater access to traditional injunctive relief: the right to exclude that, according to *eBay* itself, lies at the foundation of the patent grant.

The holding in *eBay* was narrow: "***We hold only*** that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *eBay*, *Inc.*, 547 U.S. at 394 (emphasis added). Accordingly, the relevant question after *eBay* is ***not*** whether traditional equitable principles survived. The Supreme Court expressly held that they did. The question is *what* they are and *how* they had been applied by the courts for more than a century in patent cases.

Importantly, the traditional principles discussed in *eBay* had been faithfully applied by this Court since its inception in the early 1980s. *See e.g.*, *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed. Cir. 1983) (evaluating each of the four *eBay* factors and applying principles that arise upon a strong showing of infringement and validity). In the wake of *eBay*, the irony is that a case meant to realign the lower courts with a long historical lineage honoring these traditional principles has had precisely the opposite effect. This case presents a much-needed opportunity to revisit *eBay* and correct the post-*eBay* departure from the traditional equitable principles that the Supreme Court sought to reaffirm and that this Court had long applied in cases such as *Smith Int'l*.

## III. ARGUMENT

### A. *eBay* Reaffirmed the Traditional Principles of Equity and a Century of Jurisprudence.

The Supreme Court in *eBay* repeatedly emphasized that it was not announcing a new body of patent law or departing from any settled equitable principles. *eBay Inc.*, 547 U.S. at 391-392. Rather, it directed courts to apply the same traditional equitable principles that had governed requests for injunctive relief for more than a century. The Court did not hold that injunctions should become more difficult to obtain, that patent owners are categorically required to prove some heightened form of commercial harm, or that any particular class or type of patentee should be *at all* favored or disfavored in equity. On the contrary, the Court expressly rejected categorical rules in either direction that led to automatic grants or denials of a final injunction.

The *eBay* Court vacated the Federal Circuit's decision, not because it had instructed the district court to enter an injunction, but because it had applied "a general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances" without evaluating three of the four equitable factors found in previous Federal Circuit and Supreme Court cases. *MercExchange, L.L.C. v. eBay, Inc.*, 401 F.3d 1323, 1339 (Fed. Cir. 2005). The district court properly evaluated all four of the equitable factors but ultimately denied injunctive relief because the plaintiff did not practice its patents. *MercExchange, L.L.C. v. eBay, Inc.*,

275 F. Supp. 2d 695, 711, 715 (E.D. Va. 2003). The Supreme Court did *not* alter the historical context or application of the equitable factors identified by the district court. Nor did it hold or suggest that any past Federal Circuit opinions properly applying those factors were wrongly decided.

That distinction matters. For years before *eBay*, the Federal Circuit already determined whether injunctions should issue by properly evaluating the four factors emphasized in *eBay*. *See e.g.*, *Smith Int'l*, 718 F.2d at 1578-1581 (evaluating and balancing all four equitable factors and applying traditional equitable principles to them). Nothing in *eBay* suggests that the Federal Circuit's previous application of traditional equitable principles to these four factors (prior to developing the "general rule" that *eBay* rejected) was erroneous: *eBay* directed a return to them. And nothing in the *eBay* majority opinion can be read to alter, let alone reverse, this Court's proper *application* of those factors, such as in *Smith Int'l*.

#### 1. ***eBay* Reaffirmed a Century-Old Right to Injunctions for Non-Practicing Patent Holders.**

Perhaps the most significant feature of the majority opinion in *eBay* has been overlooked and disregarded. The Supreme Court did not just reject the Federal Circuit's near-automatic and irrebuttable issuance of injunctions. It also rejected the district court's erroneous conclusion that, even while appropriately assessing all four equitable factors, the status and nature of MercExchange as a non-practicing patentee, and its attendant willingness to license its patents, was *alone* sufficient to

deny injunctive relief. *eBay*, 547 U.S. at 393. The Supreme Court rejected that reasoning because the *per se* denial of an injunction to a non-practicing patentee due to its status as such "[could not] be squared with the principles of equity adopted by Congress." *Id*. The district court's reasoning was directly "in tension with our decision in *Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405 (1908)." *Id*.

This aspect of the case is critical to understanding the real scope of *eBay*—and its proper application. To start, beyond the question presented by eBay's petition for certiorari ("Whether the Federal Circuit erred in setting forth a general rule in patent cases that a district court must, absent exceptional circumstances, issue a permanent injunction after a finding of infringement"), the Supreme Court itself posed a second, pointed question to the parties in its grant of certiorari: "Whether this Court should reconsider its precedents, including *Continental Paper Bag* ..., on when it is appropriate to grant an injunction against a patent infringer." *eBay Inc. v. MercExchange, L.L.C.*, 546 U.S. 1029 (2005) (mem.) (granting certiorari and directing the parties to address that additional question).

*Continental Paper Bag* expressly recognized the right of a patent owner to exclude others even when that patent owner does not practice the invention. 210 U.S. at 422-30. Far from reconsidering *Continental Paper Bag*, the *eBay* majority opinion

reaffirmed it.[2] In view of the Court's certiorari question to the parties on whether this precedent should be revisited, this confirms that a patent owner's decision to license rather than manufacture ***does nothing*** to diminish the underlying exclusionary right.[3] Accordingly, *eBay* did nothing to weaken the rights of patentees who choose not to incorporate their inventions into products. Instead, it explicitly repudiated a lower-court approach that treated a patentee's failure to commercialize its invention as an element tipping the balance against an injunction.

*Continental Paper Bag* and the long line of cases that follow it establish that the right to exclude is not affected by the patentee's nonuse of the claimed invention. The right to exclude is instead the very essence of the patent grant. *Cont'l Paper Bag Co.*, 210 U.S. at 429 ("exclusion may be said to be of the very essence of the right conferred by a patent"). The patent grant "consists altogether in the right to exclude

---

[2] During briefing and oral argument, counsel for eBay agreed that *Continental Paper Bag* should not be reconsidered or disturbed.

[3] This aligns with the view of the United States, and Solicitor General Paul D. Clement, who wrote in the government's amicus brief supporting the patent owner MercExchange: "There is no warrant for this Court to overrule its decision in *Continental Paper Bag* …, or its other decisions addressing the appropriateness of granting injunctions in patent cases. The Court **correctly held** in *Continental Paper Bag* that a federal court may grant a patentee an injunction preventing continuing infringement **even if the patentee has 'unreasonab[ly]' failed to practice its own invention**." Brief for the United States as Amicus Curiae Supporting Respondent at 24-25, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) (No. 05-130) (emphasis added; alteration in original) (citing *Continental Paper Bag*, 210 U.S. at 429-430).

every one [sic] from making, using, or vending the thing patented, without the permission of the patentee. This is all that he obtains by the patent." *Id.* at 425.

These fundamental exclusionary rights are codified in the Patent Act. *See* 35 U.S.C. § 154(a)(1) ("Every patent shall contain … *a grant to the patentee … of the right to exclude others* from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States") (emphasis added). Our Constitution explicitly authorizes the right of patent exclusion. *See* U.S. Const., Art. I, § 8, cl. 8 ("To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors *the exclusive Right* to their respective Writings and Discoveries") (emphasis added).

*Continental Paper Bag* did *not* decide that injunctions must always issue in every case; like *eBay*, it left the possibility open that in applying the usual equitable principles, there might be situations in which an injunction was not appropriate. *Id*. at 430 (declining to decide whether "a court of equity might be justified in withholding relief by injunction" based on the public interest). But patent owners have always had the option to not practice their patents, and *that* decision by the holder of the property has no bearing on, or proper place in, the equitable analysis. *Id*. at 427-428. In *Continental Paper Bag*, the patent owner had never commercially used the patented machine, yet the Court upheld the injunction. *Id.* The nonuse was

immaterial because "it is the privilege of any owner of property *to use or not use it, **without question of motive***." *Id.* at 429 (emphasis added).

The Supreme Court has repeatedly reaffirmed this principle. For example, in *Special Equipment Co. v. Coe*, 324 U.S. 370, 378 (1945), the Court held that "[t]he patent grant is not of a right to the patentee to use the invention, for that he already possesses. It is a grant of the right to exclude others from using it." The *Special Equipment* Court further found "…no support to the contention that a patentee may not rightly use his patent as a protection against misappropriation of his invention, even though it is not used." *Id*. at 378-379.

More recently, in *Dawson Chemical Co. v. Rohm & Haas Co*., 448 U.S. 176, 215 (1980), the Supreme Court described the "long-settled view that ***the essence of a patent grant is the right to exclude others*** from profiting by the patented invention." 448 U.S. 176, 215 (1980) (emphasis added) (citing both *Continental Paper Bag*, 210 U.S. at 429 and *Zenith Radio Corp. v. Hazeltine Research, Inc*., 395 U.S. 100, 135 (1969)). Notably, the Supreme Court declined to "manufacture" a compulsory licensing requirement and criticized the concept, noting that "[c]ompulsory licensing is a rarity in our patent system." *Id*.

That the "essence" of the patent grant "is the right to exclude" reflects the broader rule that compulsory patent licensing is strongly disfavored. *Id*. Discomfort with compulsory licensing is also found in the *eBay* concurrence of Chief Justice

Roberts, who emphasized "the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes." *eBay*, *Inc.*, 547 U.S. at 395 (emphases in original). Indeed, "Congress has frequently been asked to change the policy of the statutes as interpreted by [the Supreme] Court by imposing a forfeiture or providing for compulsory licensing if the patent is not used within a specified time, *but has not done so*." *Special Equipment Co.*, 324 U.S. at 379 (emphasis added); *see also Hartford-Empire Co. v. United States*, 323 U.S. 386, 417 (1945) ("Congress was asked as early as 1877, and frequently since, to adopt a system of compulsory licensing of patents. It has failed to enact these proposals into law."). Congress has still not done so. And the Supreme Court has consistently rejected efforts to force licensing indirectly through categorical denials of injunctive relief. The historical tradition emphasized in *eBay* cannot be divorced from a century of the Court's rejection of compulsory patent licensing.

*eBay* is thus inextricably tied to and guided by *Continental Paper Bag* Supreme Court precedent. Had the Supreme Court wished to diminish the exclusionary rights repeatedly recognized in this precedent, *eBay* presented the ideal vehicle for doing so. Indeed, the Court even expressly invited briefing and comment on that question. The Court then reiterated that precedent as a reason the district court's analysis was wrong. None of this can be reconciled with interpretations of

*eBay* that treat non-practicing patentees as categorically disfavored candidates for injunctive relief resulting in a *de facto* compulsory licensing regime for a certain type of patent owner. There is no support for such a dramatic shift away from the historical tradition to which the *eBay* majority dictated a return.

### 2. Nothing in *eBay* Altered Traditional Equitable Principles or Their Associated Legal Conclusions.

Current readings of *eBay* often assume the decision abolished all legal conclusions associated with equitable relief (sometimes couched as "presumptions"). But notably absent from the majority opinion is *any* discussion of the legal conclusions historically used in evaluating the four factors.

That silence speaks volumes. The district court applied historically accepted legal principles throughout the proceedings that culminated in *eBay*. Consistent with this Court's established jurisprudence, the district court recognized a critical point: a clear showing that infringement of a likely valid patent will continue establishes both irreparable harm and the inadequacy of monetary damages. This shifted the burden to the defendant to prove otherwise. *MercExchange, L.L.C.*, 275 F. Supp. 2d at 711 (district court considering the four factors and noting where "validity and continuing infringement have been clearly established . . . immediate irreparable harm is presumed.") (quoting *Odetics, Inc. v. Storage Tech. Corp*., 14 F. Supp. 2d 785, 794 (E.D. Va. 1998)(in turn quoting *Smith Int'l*).

On review, the Supreme Court embraced the four factors considered by the district court—and neither mentioned nor criticized the district court's identified "presumptions." The Court appears only to have taken issue with the district court's erroneous conclusion, that evidence of the "'…plaintiff's willingness to license its patents' and …'its lack of commercial activity in practicing the patents' *[were] sufficient to establish* that the patent holder would not suffer irreparable harm if an injunction did not issue." *See eBay*, *Inc.*, 547 U.S. at 393 (citing *MercExchange, L.L.C.*, 275 F.Supp.2d at 711 and noting "[t]o the extent that the District Court adopted such a categorical rule, then, its analysis cannot be squared with the principles of equity adopted by Congress.").[4]

The Supreme Court's focus on the sufficiency of *defendant's* evidence presupposed that plaintiff had demonstrated irreparable harm and that defendant now bore the burden of proving otherwise. It is difficult to square this with later decisions by this Appeals Court suggesting that *eBay* jettisoned the so-called "presumptions" related to irreparable harm. *See, e.g.*, *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659

[4] The Supreme Court did state that a plaintiff seeking a permanent injunction "must satisfy a four-factor test," *eBay*, 547 U.S. at 391, but it did *not* state that a plaintiff must affirmatively prove each factor without the benefit of related long-standing principles. Nor did the Court hold that rebuttable presumptions have no role in applying the four-factor inquiry. Moreover, the presumptions traditionally arose only after a plaintiff met an initial burden of proof. *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) ("A clear showing of validity and infringement creates a rebuttable presumption of irreparable harm.") (citing *Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1270 (Fed. Cir. 1985).

F.3d 1142, 1149 (Fed. Cir. 2011) ("We … confirm that *eBay* jettisoned the presumption of irreparable harm…"); *see also Socket Sols., LLC v. Import Global, LLC*, No. 2025-1121*, slip op.* at 10 (Fed. Cir. Aug. 4, 2026) ("After eBay, we confirmed the presumption of irreparable harm was abolished as it applied to determining injunctive relief.") (citing *Robert Bosch*, 659 F.3d at 1149).

Amicus recognizes that the panel in this case, like the panel in *Socket Solutions LLC*, may consider itself bound by *Robert Bosch*. However, the decision in *Robert Bosch* departs so sharply from traditional equitable principles that it warrants reconsideration, either in this case or by the court sitting *en banc*. *Trump v. CASA* confirmed that *only Congress* can change the traditional principles of equity. 606 U.S. at 841 ("Observing the limits on judicial authority—including, as relevant here, the boundaries of [equity in] the Judiciary Act of 1789—is required by a judge's oath to follow the law."); *see also* H. Tomás Gómez-Arostegui & Sean Bottomley*, The Traditional Burdens for Final Injunctions in Patent Cases c.1789 and Some Modern Implications,* 71 Case W. Rsrv. L. Rev. 403, 409-11 (2020) ("Unless altered by Congress, the 'substantive prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief . . . depend on traditional principles of equity jurisdiction' circa 1789.") (quoting *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999)).

The proposition that *eBay* jettisoned the presumption of irreparable harm has no support in the *eBay* majority opinion itself. Although the petitioners in *eBay* asked the Court to address the separate rebuttable presumptions, it declined to do so. Brief of Petitioners at 29-30, *eBay*, 547 U.S. 388 (No. 05-130); Brief for Respondent at 16-17, *eBay*, 547 U.S. 388 (No. 05-130); Reply Brief at 7, *eBay*, 547 U.S. 388 (No. 05-130). Even *Robert Bosch* itself noted that *eBay* "did not expressly address the presumption of irreparable harm… ." *Robert Bosch LLC*, 659 F.3d at 1148.

Faced with its own acknowledgement that the case did not address presumptions, the *Robert Bosch* court, on its own, had to turn to appellate decisions from *other circuits* related to *copyrights* to draw its conclusion that *eBay* had jettisoned presumptions related to *patents*—in a case where the parties *had not even raised the issue*. *Id*. The fact that the *Robert Bosch* panel needed to travel so far afield to find support for its conclusion only underscores how incorrectly decided that case was. In any event, because *eBay* did not expressly criticize, or even mention, the traditional presumptions applied to each of the four factors, there was no basis to jettison them.

By contrast, this Court's early decision in *Smith Int'l* correctly framed the traditional equitable doctrines and applied the related legal conclusions. *Smith Int'l,* 718 F.2d at 1581 ("Where validity and continuing infringement have been clearly established, immediate irreparable harm is presumed. To hold otherwise would be

contrary to the public policy underlying the patent laws."). Because *eBay* did nothing to alter this Court's decision in *Smith Int'l*, that holding should be reaffirmed, either here or *en banc*, as the correct framework for evaluating patent injunctions.

**3. Justice Kennedy's Non-Binding Concurrence Is a Minority View Historically Expressed in Dissents.**

In his concurrence in *eBay*, Justice Kennedy raised policy concerns regarding the business model of certain non-practicing plaintiffs who focus on licensing rather than manufacturing. 547 U.S. at 395-97 (Kennedy, J., concurring). His opinion is not controlling precedent. *See, e.g.*, *Md. v. Wilson*, 519 U.S. 408, 412-413 (1997) ("We agree with respondent that the former statement was dictum, and the latter was contained in a concurrence, so that neither constitutes binding precedent."). Despite this, lower courts have erroneously given more weight to this concurrence than it deserves.

While Justice Kennedy's thoughts may be legitimate subjects for legislative debate, they were not adopted by the majority in *eBay*. This is unsurprising because they run counter to over a century of earlier binding precedent. In fact, Justice Kennedy's views align with those previously raised in Supreme Court ***dissents***—views that have been repeatedly and expressly rejected by the majority opinions.

For example, Justice Harlan's dissent in *Continental Paper Bag* argued that public policy considerations should tip the balance against issuing injunctive relief to the non-practicing plaintiff. 210 U.S. at 430 (Harlan, J., dissenting). The majority

expressly rejected that position because, as already discussed, the patent right to exclude does not depend upon whether its owner chooses to manufacture practicing products. *Id.* at 422-30.

In the same vein, in *Special Equipment Co. v. Coe*, the Supreme Court rejected Justice Douglas's similar dissenting argument that exclusionary patent rights should be conditioned upon use of the patented invention. *Special Equipment Co.*, 324 U.S. at 381-82 ("One defense [in *Continental Paper Bag*] was that the patentee had suppressed the patent. The Court held, Mr. Justice Harlan dissenting, that suppression of the patent was no defense; that the patentee's 'right can only retain its attribute of exclusiveness by a prevention of its violation.' *Id*., p. 430. I think it is time to be rid of that rule.") (Douglas J., dissenting).

The majority retorted that Congress was fully aware that inventors might choose not to practice their inventions, and that the legislature knew how to impose a working requirement when it wished to do so: in fact, at one time Congress conditioned patent rights granted to aliens on actual use of the invention but later repealed that requirement. *Id*. at 378. This shows a deliberate Congressional choice *not* to make the enforceability of exclusionary patent rights dependent on commercialization of a claimed invention. *Id*. The Court rejected the contention that a patent owner may not prevent "misappropriation of his invention, even though it is not used." *Id* at 379.

However, because *eBay* did not rule on the merits, but instead vacated and remanded, Justice Kennedy's historically minority view was elevated to a concurrence since he agreed with vacatur. But his non-binding concurrence merely reflects a view that has been repeatedly rejected by binding Supreme Court precedent for a century.

Instead, it is the binding majority opinion in *eBay* that honors and aligns with the long line of decisions recognizing that the patent right is, fundamentally, a right to exclude without regard for the nature or motives of the patent owner. Far from discarding that history as Justice Kennedy urged, the majority embraced it.

This Court should clarify and realign post-*eBay* doctrines with the majority's actual holding, which is in accord with Federal Circuit precedent articulated in cases such as *Smith Int'l*.

### B. The Misapplication of *eBay* Has Fundamentally Changed Patent Rights and Enforcement.

Justice Kennedy's non-precedential concurrence has exerted a disproportionate influence on post-*eBay* injunction jurisprudence, leading to a consistent misapplication of the decision's actual holding. *See e.g.*, Ryan T. Holte, *The Misinterpretation of eBay v. MercExchange and Why: An Analysis of the Case History, Precedent, and Parties*, 18 Chap. L. Rev. 677, 721-23 & n.241 (2015) (explaining that lower courts have frequently relied upon Justice Kennedy's dissenting view regarding non-practicing entities while giving insufficient weight to

the majority opinion's direction that courts apply traditional equitable principles). The result has improperly treated licensing-focused or non-practicing patentees in a manner that reflects the dissents in *Continental Paper Bag* and *Special Equipment* instead of the binding majority opinions in those cases—and in *eBay* itself.

To observe the outsized importance lower courts have placed on Justice Kennedy's concurrence, one need look no further than the decision on remand in the *eBay* dispute itself. There, the district court embraced and applied his comments, noting that MercExchange was "part of the [licensing-focused] 'industry'" that Kennedy had described. *See MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 582 (E.D. Va. 2007) (quoting Kennedy's concurrence while noting that "[p]articipation in such industry lessens the impact of MercExchange's plea for equitable relief…"). Through this lens, the court emphasized the patentee's two-employee status, its public statements about selling IP rights, and its licensing business as dispositive factors in rejecting equitable relief because "money is all that such a party truly seeks." *Id*.

Somehow lost in the years since is the fact that the majority in the *eBay* Court *rejected* such categorical considerations. It rejected any premise that injunctions cannot issue when the patent holder is engaged in licensing as its primary business. By substituting the Kennedy concurrence as the operative framework, lower courts have converted his contextual observations into a new categorical rule in the

opposite direction. The result is that lower courts now routinely hold patent holders' business models and the economic structure as dispositive adverse facts. *See, e.g.*, Holte, 18 Chap. L. Rev. at 721-23 (discussing tendency of district courts to categorically emphasize the nature of patentees and their industries, at odds with the historical practice *eBay* sought to preserve.).

This is the very type of error that *eBay* explicitly sought to correct, and the approach is untethered from tradition and history, contrary to the *Continental Paper Bag* precedent that *eBay* expressly restated. This Court's deferential review of injunction decisions, tending to lean away from the *eBay* majority and toward Justice Kennedy's concurring dicta, has permitted a mere concurrence to supplant *eBay*'s unanimous majority holding and a century of equity jurisprudence. This has created a body of law that treats patent holders' licensing-focused business models as dispositive evidence against injunctive relief—exactly what the Supreme Court rejected.

Apart from dishonoring the holding of *eBay* and its historical context, the lower courts' misapplication of the case has substantially altered patent enforcement in the United States. Recent empirical work examining every federal patent case involving requests for injunctive relief from 2000 through 2023 found that *eBay* significantly reduced both requests for, and grants of, permanent injunctions. *See* Kristina M.L. Acri née Lybecker, *Injunctive Relief in Patent Cases: The Impact of*

*eBay*, 38 Harv. J.L. & Tech. 735, 739-40, 755-66 (2024). Relative to the pre-*eBay* baseline, mere *requests* for permanent injunctions declined approximately 65% for operating companies and nearly 87% for non-practicing entities. Grants of those diminished requests declined even more dramatically—approximately 67% for operating companies and more than 90% for non-practicing entities. *Id.* These precipitous declines in post-*eBay* requests and grants by type of patentee are depicted against the pre-*eBay* baseline below:




Given the substantial decline in requests for permanent injunctions after *eBay*, sophisticated litigants appear to have adjusted their enforcement strategies in response to diminished expectations of obtaining exclusionary relief. *Id.*; *see also* Kirti Gupta et al., *Intellectual Property Litigation: U.S. Trends in Global Perspective* 14-15 (Cornerstone Research, June 2026).

### C. The Misapplication of *eBay* Has Exacerbated the Costs and Complexity of Patent Litigation by Fostering Parallel Proceedings Overseas.

The consequences of post-*eBay* patent jurisprudence extend beyond the availability of injunctions in individual cases. They have fundamentally altered the geography of global patent disputes. Patent owners have increasingly turned to jurisdictions that continue to protect the exclusionary nature of patent rights.

Patent disputes have become more multinational, with litigants employing coordinated global litigation strategies designed to obtain effective relief where available. Rather than reducing patent enforcement, developments in the U.S. over the past twenty years have contributed to the expansion and "export" of patent litigation into foreign jurisdictions offering "stronger injunction regimes, faster procedures, specialized courts, and greater strategic leverage." Gupta et al., at 18.

That shift is particularly evident in Europe. Germany, for example, has become one of the world's most active patent enforcement venues. German courts continue to function as the "primary forum for securing early enforcement" in global patent disputes, and injunctions remain the default remedy notwithstanding recent proportionality reforms. *Id.* at 21. Likewise, the Unified Patent Court ("UPC"), established in 2023 to adjudicate patents in force in various European Union member states, offers patent owners the prospect of pan-European injunctions through a centralized forum operating on accelerated timelines. *Id.* at 11. The UPC's rapid

growth demonstrates that sophisticated patent owners continue to value exclusionary relief and *will* seek it where it is available. *Id*. at 19-20.

Many foreign jurisdictions remain significantly more injunction-oriented than the U.S. in modern patent litigation. Germany, the Netherlands, and the UPC—and even China—all offer stronger prospects for exclusionary relief than patentees can reasonably expect in United States District Courts. *Id.* at 11, 14, 18-24. Similar dynamics are also emerging in this hemisphere. For example, Brazil is becoming an important patent venue, due to its large consumer market, the efficiency with which cases are handled as well as its courts' willingness to grant preliminary injunctive relief.

This is a significant shift. Historically, United States courts occupied a unique position in global patent litigation. At the hub of a global innovation economy, they offered meaningful remedies in the form of both monetary damages and exclusionary relief. A successful patentee could thus obtain compensation for past infringement while also preventing future willful trespass on its rights of exclusivity in the largest consumer market in the world. That combination made U.S. courts the natural center of gravity for important patent disputes. Far from requiring American innovators to travel overseas to get meaningful relief for patent infringement, this reality allowed such disputes to consistently be decided by a jury of their American peers.

Over the last two decades, however, that position has weakened. To be fair, the decline is perhaps not attributable to the misapplication of *eBay* alone. *See id.* at 4, 11-13 (citing, among other reasons, post-AIA *inter partes* review proceedings). Yet the precipitous decline of *requests* for injunctive relief stands out as perhaps the most consequential change: as the data show, "[t]he availability of injunctions in U.S. patent litigation declined significantly following *eBay*," and patent litigation increasingly became focused on monetary relief through the type of heavily disfavored "compulsory licensing" criticized by the Supreme Court in *Dawson Chemical*. *Id.* at 11, 14-15. It cannot be ignored that the constrained injunction standard following *eBay* is a principal factor driving patent disputes away from the courts of the United States. *Id*. at 4, 11-13, 18.

As discussed, a stark divide in available relief has also emerged based on the nature and business model of the patentee, contrary to the express guidance of *eBay* and its predecessors. Empirical scholarship confirms that *eBay* has created a "bifurcated regime" in which operating companies often continue to obtain injunctions while non-practicing patentees generally do not. Christopher B. Seaman, *Permanent Injunctions in Patent Litigation After eBay: An Empirical Study*, 101 Iowa L. Rev. 1949, 1952-53 (2016). The result is not merely a change in remedies, but also in forum incentives.

The diffuse global patent litigation system post-*eBay* increasingly reflects this reality. While the United States remains important as a jurisdiction for monetary damages, Europe is now the focal point for injunction-oriented enforcement. *Gupta et al.*, at 18, 22-24. U.S. courts are no longer a forum likely to provide complete relief to its domestic inventors. Instead, they now function as only one component of a broader and more disparate global patent assertion landscape that is necessarily more expensive, complex, and logistically challenging.

Patents exist to encourage investment in innovation through the grant of enforceable exclusionary rights, and the federal patent laws "provide the baseline of free competition upon which the patent system's incentive to creative effort depends." *Bonito Boats,* 489 U.S. at 156-157. When the leading innovation economy in the world becomes less capable of honoring those rights through meaningful enforcement, the carefully balanced incentives of the Patent Act created by Congress are necessarily weakened. The result is not less litigation, but more *foreign* litigation as American inventors grow to rely more heavily on non-American courts to find relief that had historically been available in the United States to protect proprietary innovation.

The lesson is not that foreign courts are behaving improperly. It is that they are increasingly performing functions for American litigants that U.S. courts historically performed. Traditional principles of equity, affirmed by *eBay*, need to

again be faithfully applied—consistent with (i) *Continental Paper Bag* and *Smith Int'l*, (ii) the historic understanding of the patent right to exclude, and (iii) the Supreme Court's recent clarification in *Trump v. CASA* that major departures from equity are the province of the legislature alone.

### D. The Misapplication of *eBay* Has Devalued Patents as Property and Incentivized Predatory Infringement.

The misapplication of *eBay* has led to a more fundamental harm: diminished patent rights as a form of property. By weakening or precluding a primary remedy for patent owners trying to stop the activities of infringing third parties, courts have lost sight of the value that patents confer, separate and apart from monetary awards. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Exclusivity is closely related to the fundamental nature of patents as property rights. It is an intangible asset that is part of [the] company's reputation."). Chief Justice Roberts recognized this in his *eBay* concurrence where he acknowledged that courts have also recognized that patent infringement causes innumerable harms that are very difficult to identify, quantify, and measure in a way that affords complete relief with only monetary damages. 547 U.S. at 395. These harms include "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities" in the marketplace, which the Federal Circuit has recognized as "all valid grounds for finding irreparable harm." Adam Mossoff, *The Injunction Function: How and Why Courts Secure Property Rights in Patents*, 96 Notre Dame

L. Rev. 1581, 1601–02 (2021) (quoting *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) (alteration in original) (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012))). As Professor Mossoff explains, "[e]ven if monetary damages can be measured and awarded by a court, this does not put a property owner in the position the owner would have been but for the wrong of the violation of the property rights. The ability to secure personal values and commercial decisions in the use of one's own property is an essential foundation of both a liberal political order and a free market." *Id.* (emphasis added); *see also id.* at 1602 (noting that due to the diminished access to injunctive relief, "[p]atents have been devalued as an asset class, as the ability to negotiate market prices, such as licensing of patents, is replaced by court-ordered compulsory licensing, which further depresses royalty rates in commercial negotiations generally."); Kristina M.L. Acri née Lybecker, *Injunctive Relief in Patent Cases: The Impact of eBay*, 38 Harv. J.L. & Tech. 735, 767 (2024) ("[T]he absence of injunctive relief distorts the market for patents, devaluing patents as an asset class.") (citing Kristin Jakobson Osenga, *The Loss of Injunctions Under* eBay*: Evidence of the Negative Impact on the Innovation Economy* 5 (2024)).

By improperly raising the bar on injunctive relief, courts too often apply a *de facto* compulsory licensing paradigm that incentivizes predatory infringement rather than innovation. The infringer's calculus is simple: "[e]ither pay now or pay later, it

is all the same to the [infringing] company. In fact, if it can pay later, the company effectively obtained an interest-free loan." Kristen Jakobsen Osenga, *"Efficient" Infringement and Other Lies*, 52 Seton Hall L. Rev. 1085, 1087 (2022) (quoting Adam Mossoff, *Institutional Design in Patent Law: Private Property Rights or Regulatory Entitlements*, 92 S. Cal. L. Rev. 921, 939 (2019))(explaining that an infringer "economically gains from deliberately infringing on a patent because it knows the patent owner will not receive an injunction") (internal quotation marks omitted).

A system that offers compulsory licensing to patent owners as the sole available form of relief broadcasts that "the worst outcome [for the infringer] would be paying the patentee for past and ongoing infringement," which incentivizes the infringer to "forgo the initial step of negotiating in the first place." *Id.* Injunctions should serve as "the backstop for negotiations, ensuring voluntary exchanges and preventing coerced transactions in which 'prices' are determined after the fact by judges" rather than through ex ante pricing negotiated between willing sellers (the patent owners) and willing buyers (the implementers). *Id.*

This devaluation of patents is not theoretical. A recent licensing survey of university technology transfer offices confirms that it is already affecting research institutions: "Academic technology transfer is predicated on the ability of academic institutions to protect their nascent intellectual property to allow for licensees to

invest and bring the invention to market. Recent patent rights erosion is tilting this balance and has resulted in fewer companies licensing academic inventions." Ass'n of Univ. Tech. Managers, *AUTM 2020 Licensing Activity Survey*, AUTM, https://autm.net/surveys-and-tools/surveys/licensing-survey/2020-licensing-survey (last visited Aug. 10, 2026).

## IV. CONCLUSION

The minority views expressed in the non-binding concurrence in *eBay* should no longer be permitted to override the majority in *eBay*. American innovators—especially those who opt to license rather than practice their inventions—have suffered an undue devaluation of their core right to exclude others from using their inventions for long enough. Amicus therefore respectfully requests that the Court clarify the proper application of *eBay*. This includes reaffirming that patent injunctions must be evaluated consistent with traditional principles of equity—without placing a thumb on the scale against patent owners who opt to license, rather than practice, their inventions.

Respectfully submitted,

*/s/ Michael C. Newman*
Michael C. Newman
James M. Wodarski
Peter J. Cuomo

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
mcnewman@mintz.com
JWodarski@mintz.com
PJCuomo@mintz.com

Stephen J. Akerley
Andrew H. DeVoogd
INTERDIGITAL, INC.
200 Bellevue Parkway, Suite 3500
Wilmington, DE 19809
(302) 281-3600
steve.akerley@interdigital.com
drew.devoogd@interdigital.com

*Counsel for Amicus Curiae*
*InterDigital, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the relevant type-volume limitation of the Federal Rule of Appellate Procedure and Federal Circuit Rules because it has been prepared using a proportionally-spaced typeface and includes 6,996 words.

Date: August 10, 2026

Respectfully submitted,

*/s/ Michael C. Newman*
Michael C. Newman
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
mcnewman@mintz.com

*Counsel for Amicus Curiae*
*InterDigital, Inc.*