**No. 26-1893**

# United States Court of Appeals for the Federal Circuit

COLLISION COMMUNICATIONS, INC.,
*Plaintiff-Appellant*,
v.
SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,
*Defendants-Appellees.*

Appeal from the United States District Court for the Eastern District of Texas
Case No. 2:23-cv-00587, Hon. J. Rodney Gilstrap

**BRIEF OF AMICI CURIAE ACUSHNET COMPANY; AMAZON.COM, INC.; CLOUDFLARE, INC.; CROWDSTRIKE, INC.; GARMIN INTERNATIONAL, INC.; GOOGLE LLC; INTEL CORPORATION; MICROSOFT CORPORATION; ROKU, INC.; SAP AMERICA, INC.; SAS INSTITUTE INC.; TESLA, INC.; VERIZON COMMUNICATIONS INC. IN SUPPORT OF APPELLEES AND AFFIRMANCE**

Evan Mann
MUNGER, TOLLES & OLSON LLP
560 Mission Street
27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000
Email: evan.mann@mto.com

September 21, 2026

Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
Suite 500E
Washington, DC 20001
Tel: (202) 220-1100
Email: ginger.anders@mto.com

*Counsel for Amici Curiae Acushnet Company; CrowdStrike, Inc.; Garmin International, Inc.; Google LLC; Intel Corporation; Microsoft Corporation; Roku, Inc.; SAP America, Inc.; SAS Institute Inc.*

Steven Callahan
CHARHON CALLAHAN
ROBSON & GARZA, PLLC
3333 Lee Parkway
Suite 460
Dallas, TX 75219
Tel: (214) 521-6400
Email: scallahan@ccrglaw.com

*Counsel for Amicus Curiae Cloudflare, Inc.*

Jennifer Librach Nall
DLA PIPER LLP (US)
303 Colorado Street
Suite 3000
Austin, TX 78701
Tel: (512) 457-7000
Email: jennifer.nall@us.dlapiper.com

*Counsel for Amicus Curiae Amazon.com, Inc.*

Ashraf Fawzy
Tesla, Inc.
800 Connecticut Ave NW
5th Floor
Washington, DC 20006
Tel: (202) 905-9221
Email: afawzy@tesla.com

*Counsel for Amicus Curiae Tesla, Inc.*

Mark C. Fleming
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Email: mark.fleming@wilmerhale.com

Steven J. Horn
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000
Email: steven.horn@wilmerhale.com

*Counsel for Amicus Curiae Verizon Communications Inc.*

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2026-1893

**Short Case Caption** Collision Communications, Inc. v. Samsung Electronics Co., Ltd.

**Filing Party/Entity** Acushnet Company; CrowdStrike, Inc.; Garmin International, Inc.; Google LLC; Intel Corporation; Microsoft Corporation; Roku, Inc.; SAP America, Inc.; SAS Institute Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/21/2026

Signature: /s/ Ginger D. Anders

Name: Ginger D. Anders

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Acushnet Company | N/A | Acushnet Holdings Corp. (NYSE:GOLF)<br>Magnus Holdings Co., Ltd.<br>Misto Holdings Corp. |
| CrowdStrike, Inc. | N/A | CrowdStrike Holdings, Inc. |
| Garmin International, Inc. | N/A | Garmin Ltd. |
| Google LLC | N/A | Alphabet Inc.<br>XXVI Holdings Inc. |
| Intel Corporation | N/A | N/A |
| Microsoft Corporation | N/A | N/A |
| Roku, Inc. | N/A | N/A |
| SAP America, Inc. | N/A | SAP SE |
| SAS Institute Inc. | N/A | N/A |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2026-1893 |
| **Short Case Caption** | Collision Communications, Inc. v. Samsung Electronics Co. |
| **Filing Party/Entity** | Amazon.com, Inc. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: Sept. 21, 2026

Signature: /s/ Jennifer Librach Nall

Name: Jennifer Librach Nall

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Amazon.com, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2026-1893

**Short Case Caption** Collision Communications, Inc. v. Samsung Electronics Co

**Filing Party/Entity** Cloudflare, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/21/2026

Signature: /s/Steven Callahan

Name: Steven Callahan

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Cloudflare, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2026-1893

**Short Case Caption** Collision Communications, Inc. v. Samsung Electronics Co

**Filing Party/Entity** Tesla, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/21/2026

Signature: /s Ashraf Fawzy

Name: Ashraf Fawzy

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Tesla, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2026-1893

**Short Case Caption** Collision Communications, Inc. v. Samsung Electronics Co., Ltd.

**Filing Party/Entity** Verizon Communications Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/21/2026

Signature: /s/ Mark C. Fleming

Name: Mark C. Fleming

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Verizon Communications Inc. | None. | None. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

None.

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| None. | | |
| | | |

# TABLE OF CONTENTS

**Page**


CERTIFICATE OF INTEREST .......... i

INTEREST OF *AMICI CURIAE* .......... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 5

I. Collision's Arguments Cannot Be Reconciled with *eBay v. MercExchange* .......... 5

II. To Obtain a Permanent Injunction, a Patentee Must Offer Evidence—Not Rely on General Rules—to Prove that Each Injunction Factor Is Met .......... 12

A. Irreparable Harm .......... 13

B. Inadequacy of Remedies at Law .......... 18

C. Balance of Hardships .......... 21

D. Public Interest .......... 24

III. The Case-Specific, Evidence-Based Analysis Required by Equity Furthers the Aims of the Patent Clause and the Patent Act .......... 25

CONCLUSION .......... 31

CERTIFICATE OF COMPLIANCE .......... 33

CERTIFICATE OF SERVICE .......... 34

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ....................18, 21

*Apple Inc. v. Samsung Electronics Co.*,
735 F.3d 1352 (Fed. Cir. 2013) ....................24, 25

*Apple Inc. v. Samsung Electronics Co.*,
809 F.3d 633 (Fed. Cir. 2015) ....................21

*Atchison v. Peterson*,
87 U.S. 507 (1874)....................13

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) ....................21, 22, 23

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989)....................25, 26

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2008) ....................24

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012) ....................18

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006).................... 2, passim

*EcoFactor, Inc. v. Google LLC*¸
137 F.4th 1333 (Fed. Cir. 2025) (en banc) ....................16

*Euphoric, LLC v. Westport Cmty. Improvement Dist.*,
179 F.4th 1118 (8th Cir. 2026) ....................8

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ....................14

*Holland v. Florida*,
560 U.S. 631 (2010)....................6

## TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Holmberg v. Armbrecht*,
327 U.S. 392 (1946) .......... 6

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) .......... 13, 15, 21, 24

*Intergraph Corp. v. Intel Corp.*,
195 F.3d 1346 (Fed. Cir. 1999) .......... 8

*Keathley v. Buddy Ayers Constr., Inc.*,
608 U.S. 647 (2026) .......... 9

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994) .......... 19

*Metalcraft of Mayville, Inc. v. The Toro Company*,
848 F.3d 1358 (Fed. Cir. 2017) .......... 17

*Morgan Drexen, Inc. v. CFPB*,
785 F.3d 684 (D.C. Cir. 2015) .......... 12

*Mylan Institutional LLC v. Aurobindo Pharma Ltd.*,
857 F.3d 858 (Fed. Cir. 2017) .......... 23

*Nichia Corp. v. Everlight Am., Inc.*,
855 F.3d 1328 (Fed. Cir. 2017) .......... 12

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC*,
584 U.S. 325 (2018) .......... 26

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007) .......... 19

*Paper Converting Machine Co. v. Magna-Graphics Corp.*,
745 F.2d 11 (Fed. Cir. 1984) .......... 16

*PBM Products, LLC v. Mead Johnson & Co.*,
639 F.3d 111 (4th Cir. 2011) .......... 20

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*PGBA, LLC v. United States*,
389 F.3d 1219 (Fed. Cir. 2004) ....................15

*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203 (10th Cir. 2009) ....................13

*TEK Global, S.R.L. v. Sealant Systems Int'l, Inc.*,
920 F.3d 777 (Fed. Cir. 2019) ....................17

*Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Elecs. Am., Inc.*,
895 F.3d 1304 (Fed. Cir. 2018) ....................14, 17, 20

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ....................3, 5, 8, 9

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ....................12, 24

*Willis Electric Co. v. Polygroup Ltd.*,
166 F.4th 1363 (Fed. Cir. 2026) ....................16

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986) ....................23

*Wisconsin Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ....................13, 15

*Wonderland Switzerland AG v. Evenflo Co.*,
162 F.4th 1346 (Fed. Cir. 2025) ....................8, 12, 15

**FEDERAL STATUTES**

35 U.S.C. § 154(a)(1) ....................7

35 U.S.C. § 261 ....................7, 26

35 U.S.C. § 283 ....................5, 7, 10

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

35 U.S.C. § 284 .......... 10

**TREATISES**

60 Am. Jur. 2d Patents § 823 (2d ed. 2026) .......... 14

**OTHER AUTHORITIES**

Paul Clement, *Patent Rights vs. Property: The Framers' Understanding of Patents* (2019), https://perma.cc/HBH6-NZR5 .......... 26

*The Evolving IP Marketplace: Aligning Patent Notice and Remedies with Competition*, Federal Trade Commission (2011) .......... 12, 27, 28

Christian Helmers & Brian J. Love, *Patent Law Reform and Innovation: An Empirical Assessment of the Last 20 Years*, 79 Int'l Rev. L. & Econ. 1 (2024) .......... 30

Josh Landau, *Much Ado About Injunctions*, Patent Progress (Aug. 1, 2019), https://patentprogress.org/2019/08/much-ado-about-injunctions/ .......... 28

Mark A. Lemley & Carl Shapiro, *Patent Holdup and Royalty Stacking*, 85 Tex. L. Rev. 1991 (2007) .......... 22

Filippo Mezzanotti & Timothy Simcoe, *Patent Policy and American Innovation After* eBay*: An Empirical Examination*, 48 Research Policy 1271 (2019) .......... 30

*Much Ado About Injunctions: Redux*, Patent Progress (Sept. 12, 2026), https://patentprogress.org/2026/09/much-ado-about-injunctions-redux/ .......... 28

Christopher B. Seaman, *Permanent Injunctions in Patent Litigation After* eBay*: An Empirical Study*, 101 Iowa L. Rev. 1949 (2016) .......... 28, 29

## INTEREST OF *AMICI CURIAE*[1]

*Amici Curiae* Acushnet Company; Amazon.com, Inc.; Cloudflare, Inc.; CrowdStrike, Inc.; Garmin International, Inc.; Google LLC; Intel Corporation; Microsoft Corporation; Roku, Inc.; SAP America, Inc.; SAS Institute Inc.; Tesla, Inc.; and Verizon Communications Inc. are businesses across diverse sectors, including automotive, consumer goods, digital media, technology, and telecommunications. Amici invest significantly in research and development, and innovation across their broad array of products and services. That innovation has earned amici tens of thousands of patents collectively. Amici are also subject to many patent infringement lawsuits, including suits brought by non-practicing entities like Collision. While amici have diverse interests, as leading innovators, they have a unified interest in the standards governing the availability of injunctive relief in patent cases.

[1] No counsel for any party authored this brief in whole or in part, and no person or entity other than *amici* and their counsel made a monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Collision asks this Court to hold that a permanent injunction is the "ordinary relief" for patent infringement because, in its view, courts adjudicating infringement suits in 1789 often found that injunctions were warranted. Br.41. Collision never acknowledges, however, that the Supreme Court considered and rejected precisely that historical-practice argument in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). This Court, of course, must follow *eBay* as binding precedent. But more fundamentally, Collision offers no justification for departing from *eBay*—because there is none. The traditional four-factor equitable inquiry that *eBay* requires in patent cases—as in all cases—provides a nuanced framework for determining when an injunction should issue, including in cases brought by non-practicing entities or patent assertion entities. That framework, as applied by this Court and the lower courts, has effectively protected patentees who have suffered irreparable harm from ongoing infringement, while safeguarding innovation and the public availability of valuable products. This Court should reaffirm its existing approach.

I. In *eBay*, the Supreme Court held that the Patent Act requires a patentee seeking an injunction to demonstrate that the four traditional equitable considerations weigh in favor of injunctive relief. The Court declined to adopt a presumptive rule that an injunction should issue upon a finding of infringement, even

though the patentee there—like Collision here—asserted that injunctions issued as a matter of course in 1789, and that traditional equitable principles therefore required that injunctions be presumptively available today. Such a rule, the Court held, would contradict the fundamental principle that courts sitting in equity must evaluate the propriety of equitable remedies based on the facts before them. Contrary to Collision's argument, *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), does not suggest that courts should attempt to apply the equitable factors in the manner that courts might have in 1789, to reach the same outcomes. That decision concerned the scope of the courts' equitable remedial authority, not the manner in which courts should apply the equitable factors in cases where they have authority.

II. Following *eBay*, this Court has appropriately required patentees to proffer *evidence* that the four traditional equitable factors—irreparable harm, inadequacy of legal remedies, the balance of hardships, and the public interest—weigh in favor of an injunction. This Court should decline Collision's invitation to replace that case-specific framework with a series of presumptive rules. Most importantly, a finding of infringement does not, without more, constitute irreparable harm as a matter of law. *eBay* rejected that very rule, and patent infringement often can be fully remedied through prospective as well as retrospective damages.

Under the four-factor framework, non-practicing entities like Collision may find it more difficult to obtain an injunction. But that is simply because non-

practicing entities may be unable to demonstrate the types of commercial and competitive harms that traditionally have counted as irreparable harm and that also weigh heavily in the analysis of the other factors. Non-practicing entities that can establish irreparable harm (in the form of impediments to entering the market or other traditionally recognized injuries) have successfully obtained injunctions.

III. Adopting Collision's presumptive rules would undermine the patent system's purpose of promoting innovation. Because patents are public franchises granted to foster innovation, courts should rigorously apply those principles rather than treat injunctions as presumptively available. By preventing a defendant from distributing its product, injunctions represent a greater burden on public use of patented products than damages. And where the patentee is a non-practicing entity, an injunction may remove the invention from the market altogether. Those concerns reinforce the importance of rigorously applying the equitable factors. In addition, adopting Collision's contention that injunctions should be "ordinary relief" in infringement cases (Br.41), even those brought by patent assertion entities, would enable those entities to use the threat of a presumptively-available injunction to extract artificially inflated settlement amounts from accused infringers. By contrast, the *eBay* framework—which has governed for 20 years—has protected innovation while ensuring that patentees who are irreparably harmed by infringement are able to obtain injunctive relief.

# ARGUMENT

## I. Collision's Arguments Cannot Be Reconciled with *eBay v. MercExchange*

Collision's position in this case, and in particular its assertion that a permanent injunction should presumptively issue upon a finding of infringement, is irreconcilable with the Supreme Court's decision in *eBay*. Contrary to Collision's suggestion, *eBay* remains good law, and nothing in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), suggests otherwise or alters *eBay*'s analysis.

A. In *eBay*, the Court construed section 283 of the Patent Act, which provides that injunctive relief "may" issue to aggrieved patent owners "in accordance with the principles of equity." 35 U.S.C. § 283. The Court held that the statutory reference to "principles of equity" requires a patentee seeking a permanent injunction to satisfy the traditional four-factor test well known in equity. 547 U.S. at 391, 393-94. Therefore, as in every other area of the law, a patentee who seeks an injunction must make a showing over and above establishing liability for infringement: the patentee must demonstrate that the traditional injunction factors each support imposing a permanent injunction.

The *eBay* Court disapproved this Court's previous approach, which was that permanent injunctions "should be denied only in the 'unusual' case, under 'exceptional circumstances' and 'in rare instances . . . to protect the public interest.'" *Id*. at 394 (citation omitted). The patentee in *eBay* defended that approach by

pointing to historical practices in courts of equity, explaining that under "traditional equity practice" in the early nineteenth century, "the accepted rule was that, once a law court had found patent validity and infringement, an equity court essentially had to issue an injunction." Resp. Br. 22-23, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 338 (2006) (No. 05-130), 2006 WL 622506, at *23 (emphasis in original). The Supreme Court rejected that understanding of traditional equitable principles, explaining that such a "categorical" approach was in fact inconsistent with its understanding of the equitable tradition. 547 U.S. at 393-94. That was because "traditional equitable principles do not permit such broad classifications." *Id*. at 393. Far from giving effect to "traditional equitable considerations," the Court explained, the patentee's approach would "*replace*" those considerations with "a *rule* that an injunction automatically follows" an infringement determination. 547 U.S. at 392-93 (emphasis added).

Such a rule would be inconsistent with equity. As the Supreme Court has repeatedly reaffirmed, "[e]quity eschews mechanical rules; it depends on flexibility." *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946). Thus, the "exercise of a court's equity powers . . . must be made on a case-by-case basis." *Holland v. Florida*, 560 U.S. 631, 649-50 (2010) (omission in original, quotations and citation omitted); *accord eBay*, 547 U.S. at 393.

The Supreme Court in *eBay* was thus presented with precisely the same argument that Collision makes here: that because courts in 1789 ordinarily granted injunctions upon a finding of infringement, the Court should understand "the principles of equity," 35 U.S.C. § 283, to require contemporary courts to presumptively issue permanent injunctions upon a finding of infringement. The Supreme Court squarely rejected that argument. This Court therefore must do the same.

The *eBay* Court also addressed—and rejected—another argument that Collision makes here, *i.e.*, that irreparable harm and inadequacy of legal remedies can be assumed based on the existence of patent infringement. Br.48-49 (arguing that ongoing infringement should constitute irreparable harm "as a matter of law"); *id*. at 52. The Supreme Court acknowledged that the Patent Act provides that "patents shall have the attributes of personal property," 35 U.S.C. § 261, including the right to "exclude others from making, using, offering for sale, or selling" the invention, 35 U.S.C. § 154(a)(1). *eBay*, 547 U.S. at 392. But, the Court explained, the "creation of a right is distinct from the provision of remedies for violations of that right," and the Patent Act's remedial provision states only that injunctions "may" issue "in accordance with the principles of equity"—which, again, require a case-specific analysis even after a finding of liability. *Id*.

Thus, though Collision does not acknowledge it, Collision is in effect asking this Court to abrogate *eBay* by accepting arguments that the Supreme Court expressly rejected. But *eBay* left no doubt: traditional equitable principles require that a plaintiff seeking an injunction offer evidence proving that each of the four factors warrants an injunction. *See Wonderland Switzerland AG v. Evenflo Co.*, 162 F.4th 1346, 1359 (Fed. Cir. 2025); *Euphoric, LLC v. Westport Cmty. Improvement Dist.*, 179 F.4th 1118, 1125 (8th Cir. 2026); *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1351 (Fed. Cir. 1999).

B. Collision is wrong that *Trump v. CASA, Inc.* effected a sea change in how courts must apply equitable principles to injunctions. Collision argues that *CASA* requires courts to exercise their equitable powers just as they would have in 1789, when the original Judiciary Act was enacted. Br.39-40. Because, according to Collision, permanent injunctions were "ordinary relief" in patent cases in 1789, injunctions must be ordinary relief today. Br.41. But the premise of Collision's argument is wrong. *CASA* does not suggest that today's courts must weigh equities in the same *manner* as courts did in 1789, to reach the same aggregate outcomes (injunctions in most cases) as courts did in 1789.

*CASA* concerned the scope of equitable *remedies* available to contemporary courts under the Judiciary Act of 1789, which confers on federal courts jurisdiction over "all suits . . . in equity." 606 U.S. at 841 (citation omitted). The Supreme Court

explained that whether that grant of authority confers the power to grant universal injunctions—*i.e.*, injunctions enjoining enforcement of executive or legislative policy against nonparties—turned on whether such injunctions were sufficiently analogous to "those sorts of equitable remedies traditionally accorded by courts of equity at our country's inception." *Id.* at 841-42 (citation omitted); *id*. at 847 ("Because the universal injunction lacks a historical pedigree, it falls outside the bounds of a federal court's equitable authority under the Judiciary Act."). It makes sense that whether a particular remedy is within the equitable authority that Congress conferred in 1789 would turn on whether that remedy existed in 1789. But that is a distinct question from how the traditional injunction factors should be applied in individual cases that are unquestionably within the courts' core equitable authority. Nothing in the Judiciary Act provides any basis to think that courts today must apply the equitable factors as though the courts were sitting in 1789, such that courts must apply a presumption in favor of injunctions if such injunctions would often have been granted in 1789. And *CASA* does not remotely suggest anything of the sort.

Indeed, that type of rigid, frozen-in-amber analysis would be contrary to the flexible, fact-specific analysis equity demands. Even after *CASA*, the Supreme Court has confirmed that equity requires case-specific consideration of the facts before the court. *See Keathley v. Buddy Ayers Constr., Inc.*, 608 U.S. 647, 655 (2026) ("Equity, we have said, 'eschews mechanical rules; it depends on flexibility.' . . . Thus, when

a court conducts an equitable inquiry, it must act 'on a case-by-case basis,' considering all relevant facts and circumstances." (citations omitted)). And, it should go without saying, the factual scenarios with which courts are presented have changed over time. *See eBay*, 547 U.S. at 396-97 (Kennedy, J., concurring) (recognizing that, because of the rapid technological and legal developments in the patent system, "district courts must determine whether past practice fits the circumstances of the cases before them"). The prevalence of injunctions in patent cases (as in other types of cases) therefore may naturally evolve over time, as equity confronts changing factual circumstances in individual cases. Equity demands that courts render justice in the cases they have today, not blindly award the same relief that was appropriate in cases 250 years ago.

Indeed, given the case-specific nature of equity, the import of Collision's assertion that injunctions were considered "ordinary" relief in 1789 is simply that the circumstances in cases in that era regularly justified an injunction. *eBay*, 547 U.S. at 396-97 (Kennedy, J., concurring). Collision's defense of its backward-looking equitable analysis proves the point. Br.41-44. Collision explains that injunctions issued in infringement cases because injunctions were the only tool courts possessed to address ongoing infringement. *Id*. But of course that is no longer the case, as the Patent Act provides authority to grant prospective royalties—which should fundamentally alter the equitable calculus. 35 U.S.C. §§ 283, 284; *Paice*

*LLC v. Toyota Motor Corp*., 504 F.3d 1293, 1314 (Fed. Cir. 2007). Moreover, many elements of patent litigation have changed in the last 250 years: technology is much more advanced and accused products are much more complicated; the adequacy of legal remedies is much improved; many patentees do not practice their patents; and Congress and the courts have recognized that injunctions may not serve the public interest in every case.

Finally, Collision relies heavily on the concurring opinion of Chief Justice Roberts (*e.g.*, Br.48), who asserted that courts considering injunctions should be cognizant of the facts that a patent confers the right to exclude, and that courts historically were receptive to injunction requests in infringement cases. *eBay*, 547 U.S. at 395 (Roberts, C.J., concurring). But in light of his agreement with the Court's holding that injunctions may not presumptively issue, the Chief Justice's observation must be understood as simply a reminder that because a patent provides the right to exclude others during its term, patentees may often expect courts to address infringement prospectively as well as retrospectively. Patentees may have valid reasons to prefer an injunction over an ongoing royalty (in which case they may satisfy the four-factor inquiry). *See* pp. 14-45, *infra*. Moreover, courts should be attuned to the circumstances that historically led courts to conclude that damages were not sufficient to redress infringement, as those circumstances, when present, may inform contemporary analysis. But as other concurring Justices pointed out,

those circumstances may not always be present today—and equity does not permit a court to ignore the specific facts in front of it in favor of a purely historical approach. *Id.* at 396-97 (Kennedy, J., concurring).

## II. To Obtain a Permanent Injunction, a Patentee Must Offer Evidence—Not Rely on General Rules—to Prove that Each Injunction Factor Is Met

This Court should continue to apply *eBay* as it has in the past. In this case, as in all cases in which a patentee plaintiff seeks a permanent injunction, the patentee must justify that injunction by presenting concrete evidence establishing that the equitable factors favor an injunction. *eBay*, 547 U.S. at 391; *see Wonderland Switzerland*, 162 F.4th at 1358-59 (reversing grant of permanent injunction where trial court relied "solely on speculative and conclusory evidence"); *Nichia Corp. v. Everlight Am., Inc.*, 855 F.3d 1328, 1341 (Fed. Cir. 2017). "Failing to satisfy any factor" may be "grounds for denying relief." *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 694 (D.C. Cir. 2015). In all cases, a court must consider a case's particular facts—in the manner discussed below—to ensure that an injunction is essential and equitable in light of all the circumstances. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982).

Given that this case involves a non-practicing entity—one that is proposing an approach that would make it easier for non-practicing entities to obtain injunctions by presumption rather than proof—the Court should be cognizant of how the traditional equitable factors apply in cases brought by non-practicing entities and

patent assertion entities.[2] The factors should be applied in the same way as in any other case; courts should not apply any presumptive rule that a non-practicing entity can or cannot prove any of the factors. *See eBay*, 547 U.S. at 393-94. But, as a practical matter, it may be more difficult for non-practicing entities to prove that the equitable factors favor an injunction. When the patentee does not offer a product that competes with the accused technology, that fact should appropriately affect the evidence-based, case-specific inquiry that equity requires.

### A. Irreparable Harm

To obtain an injunction, a patentee must demonstrate that "it has suffered an irreparable injury," *eBay*, 547 U.S. at 391, and that a permanent injunction is therefore necessary to "alleviate future harm," *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010). Irreparable harm is, by definition, harm that cannot be fully remedied later. *See*, *e.g.*, *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009); *Atchison v. Peterson*, 87 U.S. 507, 515 (1874). For that reason, commercial injuries that can be remedied by damages do not in themselves constitute irreparable harm. *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Recoverable monetary loss may constitute irreparable harm only

---

[2] Patent assertion entities are a subset of non-practicing entities whose business model focuses on acquiring patents from third parties and asserting those patents against manufacturers already using the technology. *The Evolving IP Marketplace: Aligning Patent Notice and Remedies with Competition*, Federal Trade Commission, at 8-9 (2011).

where the loss threatens the very existence of the movant's business."). Collision nonetheless asserts that a finding of patent infringement equates to irreparable harm. Br.41. The district court, for its part, suggested that harm from infringement is irreparable because patent damages are difficult to calculate. Appx32. Both assertions are incorrect.

1. Contrary to Collision's argument, Br.47, the mere fact that Samsung is an adjudicated infringer does not justify an automatic finding of irreparable harm. *eBay* squarely rejected that proposition. *eBay*, 547 U.S. at 392-93 (observing that copyright owners, like patentees, possess the right to exclude others from infringing their intellectual property, yet copyright infringement does not constitute automatic irreparable harm); p. 7, *supra*. Indeed, patent infringement often can be remedied after the fact. The value of using a patented invention can be calculated, including by assessing the bargain the parties would have reached in an arm's-length transaction. *See*, *e.g.*, *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y. 1970). Because money damages are often sufficient to remedy infringement, infringement alone is not enough to show that the patentee has suffered or will suffer irreparable injury. 60 Am. Jur. 2d Patents § 823 (2d ed. 2026).

To satisfy the irreparable-injury element, therefore, a patentee must offer proof that infringement will cause injury that is difficult to remedy except by an injunction. As this Court has recognized, those harms tend to be commercial,

competitive, or reputational harms that are by their nature difficult to quantify. *See*, *e.g.*, *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1331 (Fed. Cir. 2018) (identifying "impaired goodwill and competitive position" as hard-to-measure harms that could justify an injunction); *i4i*, 598 F.3d at 861-62 (identifying "harm to a patentee's market share, revenues, and brand recognition" as relevant to determining irreparable injury).

Given that these traditionally recognized irreparable harms are linked to participation in the market, a non-practicing entity may have a more difficult time establishing irreparable harm. Of course, a non-practicing entity may be able to demonstrate irreparable harm by presenting evidence that it intends to enter the market and that its competitive position will be harmed by continued infringement, that its market entry has been hindered or prevented by infringement, or some other bespoke harm. But at the same time, the district court here was wrong to suggest that a non-practicing entity suffers irreparable harm merely because it *might* enter the market at some future time. *See* Appx31-32. In every case, the patentee must present *evidence* that it "will suffer irreparable harm if the court withholds injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004); *Wonderland*, 162 F.4th at 1358 ("speculation" is insufficient to show irreparable harm) (citation omitted). Instead of relying on speculation, the "movant must provide proof that the harm has occurred in the past and is likely to occur again, or

proof indicating that the harm is certain to occur in the near future." *Wisconsin Gas*, 758 F.2d at 674.

2. The district court also asserted that a non-practicing entity could show irreparable harm simply because "(1) patents can be difficult to value and (2) damages can be difficult to calculate." Appx32. That is wrong for two reasons.

First, infringement damages are in fact quantifiable. Although calculating damages can be *complex*, that does not mean that infringement damages cannot be *quantified* to a reasonable degree of approximation. Damages remain the predominant remedy for infringement, and this Court has well-developed doctrines governing their calculation. *See*, *e.g.*, *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984); *Willis Electric Co. v. Polygroup Ltd.*, 166 F.4th 1363, 1374 (Fed. Cir. 2026). Nothing about patent infringement is intrinsically less susceptible to damages than other legal injuries, such as copyright infringement, antitrust violations, or other complex commercial harms.

To be sure, there is some uncertainty in calculating damages. The calculation of a reasonable royalty, for example, "necessarily involves an element of approximation and uncertainty." *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1340 (Fed. Cir. 2025) (en banc) (citation omitted). While it is well recognized that calculation of retrospective damages may be imprecise, that uncertainty is widely accepted as tolerable. There is no reason—certainly Collision points to none—why

that same uncertainty would be intolerable when considering whether future infringement is an irreparable harm.

Second, a lack of precision in measuring appropriate compensation does not render harm irreparable. Whether or not a harm is irreparable (and whether legal damages are adequate compensation) depends on the *type* of harm. Irreparable injuries are injuries that are intrinsically difficult to remedy retrospectively at all, or that are difficult to value reliably. *See*, *e.g.*, *TEK Global, S.R.L. v. Sealant Systems Int'l, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019) (affirming injunction because patentee's "lack of diversification exposes it to a particular risk of lowered market share, and money damages cannot adequately compensate for the related injury to its reputation"); *Metalcraft of Mayville, Inc. v. The Toro Company*, 848 F.3d 1358, 1368-69 (Fed. Cir. 2017) (affirming preliminary injunction because patentee showed that losing customers had "far-reaching, long-term impact" that was very difficult to quantify due to "'ecosystem' effects, where one company's customers will continue to buy that company's products and recommend them to others" (citation omitted)); *accord Texas Advanced*, 895 F.3d at 1331. A patentee that cannot show those types of harms should not be able to receive a permanent injunction simply because patent damages—again, a routine feature of patent judgments—may be complex to calculate (just as damages may be complex to calculate in copyright or other complex commercial matters).

The district court's contrary suggestion is particularly troubling because it would weigh in favor of an injunction in every case. Although the district court framed its presumption in terms of non-practicing entities, the propositions that "(1) patents can be difficult to value and (2) damages can be difficult to calculate[,]" Appx32, would seem to apply equally in cases where patentees do practice their inventions. The result therefore would be a presumption that patentees are irreparably harmed in every case where infringement is shown. But that rule contradicts *eBay*. 547 U.S. at 393. And even taken at face value, the district court's suggestion that infringement of patents owned by non-practicing entities should constitute irreparable harm because damages are difficult to calculate in those cases is exactly backwards, as it would treat non-practicing entities more favorably than entities that *are* practicing their patents.

### B. Inadequacy of Remedies at Law

Patentees must also present evidence that damages or other remedies at law are inadequate. This factor is closely related to the determination whether a plaintiff will suffer irreparable harm, because if damages or another legal remedy are adequate to address the plaintiff's injury, that injury is necessarily not irreparable. *See ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012) ("[T]he issues of irreparable harm and adequacy of remedies at law are inextricably intertwined."); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664

F.3d 922, 930 (Fed. Cir. 2012). In other words, if damages fully compensate a patentee's harms from past infringement, that is a strong indication that the patentee should not be entitled to an injunction going forward, unless it can explain why prospective monetary relief will not adequately remedy future infringement.

Collision, however, criticizes the district court for stating that the possibility of ongoing infringement can be adequately remedied by prospective monetary relief. Br.52 (citing Appx35 and *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007)). Collision asserts that ongoing royalties are in fact equitable relief, and therefore they cannot be considered an "adequate remedy at law." Br.53. Even assuming that is true, however, that does not reduce the relevance of prospective damages to the propriety of an injunction that forbids using the product *at all*. Equitable relief must be tailored to be no broader than reasonably necessary. *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citing the "general rule" that equitable relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs") (citation omitted). An order requiring ongoing royalties—but permitting the defendant to continue using the accused products—is narrower than an injunction against all use, and therefore represents a narrower form of equitable relief that may obviate the need for an injunction. Thus, whether ongoing royalties are considered a legal or equitable remedy, the patentee must demonstrate that they would be inadequate to compensate

the harm in order to obtain a permanent injunction against using the accused products.

That showing requires a patentee who has received damages for past infringement to explain why damages are insufficient going forward. Of course, there is no per se rule that a plaintiff cannot win an injunction merely because it has recovered damages for a past injury. *See Texas Advanced*, 895 F.3d at 1331; *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126-28 (4th Cir. 2011). But receipt of damages for retrospective infringement raises an inference that prospective damages will be adequate going forward. A patentee might overcome that inference by offering evidence that, for example, the patentee has a practice of including terms in its licenses that royalty damages would not re-create, or the patentee has suffered market or reputational harms that are not compensated by damages. *See Texas Advanced*, 895 F.3d at 1331.

Here, however, the district court never analyzed whether prospective damages would be insufficient to remedy future acts of infringement by Samsung. In concluding that Collision had met its burden, the court appears to have relied on the "historical underpinnings of the injunction as an equitable remedy in patent cases[,]" thereby importing the very presumption in favor of an injunction that *eBay* rejected. Appx36. Equity demands assessing the specific circumstances in the case before the court to determine whether an injunction is appropriate *here*. *See* pp. 6-7, *supra*.

### C. Balance of Hardships

The balance-of-equities factor requires the patentee to demonstrate that the "relative effect of granting or denying an injunction on the parties" weighs in favor of an injunction. *i4i*, 598 F.3d at 862-63. In the context of patent suits, relevant considerations include "the parties' sizes, products, and revenue sources." *Id.* This factor too is related to irreparable harm; given that a patentee must show irreparable harm as a prerequisite for an injunction, the balance-of-equities factor requires a court to consider the harm that an injunction would inflict on the defendant in relation to the patentee's showing of irreparable harm. *Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 645-46 (Fed. Cir. 2015); *see also Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378-79 (Fed. Cir. 2020).

As a practical matter, non-practicing entities may have a harder time proving that the balance of hardships favors granting them an injunction for the same reasons that they may have greater difficulty demonstrating irreparable harm. A patentee who does not offer a product is unlikely to lose market share, lose customers, or "compete against its own patented invention" in the absence of an injunction. *See Apple*, 809 F.3d at 645. Indeed, even when a patentee *does* offer a product or service, this Court has held that the balance of hardships may not favor an injunction where the patentee's offering did not compete with the infringing product. *See ActiveVideo*, 694 F.3d at 1341. Moreover, the more tenuous a non-practicing

entity's claim to market-related irreparable harm is, the more likely it may be that significant harm to the defendant would tip the balance of hardships against an injunction.

There are several circumstances in which a defendant's hardships may weigh against an injunction, for instance, where the defendant was unable to implement a non-infringing alternative and its business relied heavily on the infringing product. *See Bio-Rad*, 967 F.3d at 1379. Even when meaningful non-infringing alternatives are available, an injunction may inflict substantial hardships, *e.g.*, where the patent covers only a minor feature of a complex product. In such a case, an injunction could prevent the defendant from earning a return on its own significant and meaningful innovations simply because its product incorporates a patented feature that is immaterial to the demand for the product. *See* Mark A. Lemley & Carl Shapiro, *Patent Holdup and Royalty Stacking*, 85 Tex. L. Rev. 1991, 2008-10 (2007). In any event, the district courts must assess the burdens injunctions will impose in each case.

Once again, however, Collision seeks to impose a general rule in all but name. Collision argues that an injunction that is limited to prohibiting the defendant from using the infringing product or features causes "no cognizable hardship" to the defendant as a matter of law. Br.31. But this Court has held otherwise. In *Bio-Rad*, the injunction prevented the defendant from distributing two infringing products for

which it had been unable to develop non-infringing alternatives, and this Court held that the district court abused its discretion in enjoining distribution despite the resulting severe harm to the defendant's business. 967 F.3d at 1379. In other words, harm to the defendant from being required to stop distributing the infringing product was very much a cognizable part of the analysis. Although Collision relies on this Court's statement that "[o]ne who elects to build a business on a product found . . . to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected," Br.31 (quoting *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 865 (Fed. Cir. 2017)), in context that statement does not suggest any general rule against considering the hardship the defendant will suffer from an injunction that prohibits infringement. In both *Mylan* and the decision from which it drew that statement, this Court identified case-specific circumstances that justified giving harm to the infringers little weight in those particular cases. *Mylan*, 857 F.3d at 865 (defendant had engaged in copying); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) (while defendant's business would be threatened by an injunction against infringement, the plaintiff's business would be equally threatened without an injunction). Where, as in *Bio-Rad*, the facts of the case do not justify discounting harm to the defendant, the Court has accorded that harm significant weight in the analysis.

### D. Public Interest

In exercising their equitable discretion, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger*, 456 U.S. at 312. In the patent context, the "touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i*, 598 F.3d at 863.

A few public interest issues specific to non-practicing entities are worth mentioning. Often patentees claim that injunctions serve the public interest by promoting a robust patent system that rewards and encourages investment in innovation, *see Apple Inc. v. Samsung Electronics Co.*, 735 F.3d 1352, 1371 (Fed. Cir. 2013), but that interest may be attenuated for certain non-practicing entities. Patent assertion entities—entities that acquire patents solely for the sake of bringing lawsuits—do not innovate and are motivated solely by financial returns. Therefore, there is reason to be skeptical that the public interest is served by granting injunctions to such entities. Additionally, enjoining an infringer from offering its product may harm the public by removing a valuable technology from the market. When the patentee is a non-practicing entity, there may be no product to substitute, disrupting the market. *See*, *e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (noting that an immediate permanent injunction would adversely affect

network carriers and handset manufacturers who incorporate infringing chips into their products). The public interest may be further disserved when the patented invention is only a small feature of the infringing product, such that an injunction would remove from the market non-infringing elements that may be valuable to consumers. *See Apple*, 735 F.3d at 1372-73 (public interest disserved where injunction would "have the effect of depriving the public of access to a large number of non-infringing features").

## III. The Case-Specific, Evidence-Based Analysis Required by Equity Furthers the Aims of the Patent Clause and the Patent Act

A. Presumptively issuing injunctions for patent infringement, as Collision advocates, would undermine the balance struck by the Constitution and the Patent Act.

Article I, § 8, clause 8, of the Constitution gives Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." The Patent Clause thus reflects a "balance between the need to encourage innovation and the avoidance of monopolies which stifle competition without any concomitant advance in the 'Progress of Science and useful Arts.'" *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146 (1989). The patent laws, too, recognize this balance. From the first Patent Act to its contemporary incarnation, "federal patent law has been about the difficult business

‘of drawing a line between the things which are worth to the public the embarrassment of an exclusive patent, and those which are not.’” *Id*. at 148 (quoting 13 Writings of Thomas Jefferson 335 (Memorial ed. 1904)). Indeed, although patents have the attributes of personal property, 35 U.S.C. § 261, they do not give rise to *private* property rights in the common-law sense. *Oil States Energy Services, LLC v. Greene’s Energy Group, LLC*, 584 U.S. 325, 335 (2018). Patents are public franchises, created by statute to promote innovation. *Id.*

Because patent rights exist only to promote public benefit, “[i]f anything, courts ought to be more skeptical about the appropriateness of injunctive relief in cases involving patent rights than in cases involving traditional property rights.” Paul Clement, *Patent Rights vs. Property: The Framers’ Understanding of Patents*, 19 (2019).[3] An injunction represents a greater burden on public use of patented products than damages: an injunction prevents the defendant from using the defendant’s product, potentially making the invention and any innovative modifications of the invention less available to the public. And in the context of non-practicing entities, injunctions threaten to remove the invention from the market altogether. Those considerations make a rigorous application of the equitable factors

[3] https://perma.cc/HBH6-NZR5

particularly important in each case, as those factors guard against unwarranted injunctions.

A rigorous equitable analysis is particularly important in the context of complex modern products, like smartphones, which may include thousands of features, each of which might involve dozens or hundreds of patents. *See Evolving IP Marketplace* at 221 (describing the problem of patent "hold-up"). Any individual patented feature may make only a de minimis contribution to a smartphone's technological or commercial success. If the owner of a single patent on a single feature is presumptively entitled to an injunction, the smartphone manufacturer may be forced to pay an exorbitant amount for a license to avoid the threat of being unable to distribute the product, especially if alternative technologies are unavailable or financially burdensome in light of investment in the current product. *Evolving IP Marketplace* at 5.

Presumptions in favor of injunctions would be especially harmful in suits involving patent assertion entities. Because patent rights reading on complex products are held by many different companies, when an accused infringer is sued by a market competitor, it can often countersue, accusing its competitor's product of infringing its own patent portfolio. This scenario frequently results in cross-licensing. *Evolving IP Marketplace* at 223. But patent assertion entities have no products and are therefore functionally immune from infringement suits. By

threatening an injunction—a threat that will be considerably more credible if injunctions are presumptively available—a patent assertion entity can often extract a hold-up ransom from the accused infringer. By contrast, when an injunction will not presumptively issue and a patent assertion entity must prove the equitable factors favor an injunction, accused infringers are more willing to challenge weak claims and are more likely to settle for lower amounts that more accurately reflect the claimed invention's value. *See Evolving IP Marketplace* at 223. Those results better track the aims of patent policy.

B. While a presumptive rule favoring injunctions would undermine the aims of patent policy, there is no indication that *eBay*'s fact-specific equitable inquiry has had a deleterious effect on patentees or the patent system. *eBay* has now been the law for 20 years. Data collected on case outcomes show that patentees still win injunctions at significant rates. Before *eBay*, patentees won an injunction in ~89% of contested cases after prevailing at trial. *Much Ado About Injunctions: Redux*, Patent Progress (Sept. 12, 2026).[4] A recent 2026 study found that in cases from 2019 through 2025, patentees were awarded permanent injunctions in 92% of cases in which they requested one, including in 84% of contested motions. *Id.* That grant rate has been stable in the years following *eBay*. A 2019 study showed that patentees

[4] https://patentprogress.org/2026/09/much-ado-about-injunctions-redux/

were granted permanent injunctions in ~85% of post-*eBay* cases. Josh Landau, *Much Ado About Injunctions*, Patent Progress (Aug. 1, 2019).[5] And a 2016 study found that permanent injunctions were granted in ~73% of cases. Christopher B. Seaman, *Permanent Injunctions in Patent Litigation After* eBay*: An Empirical Study*, 101 Iowa L. Rev. 1949, 1982-83 (2016). Clearly, injunctive relief for patentees is still readily available when patentees seek it. To be sure, request rates for permanent injunctions decreased after *eBay*, perhaps because non-practicing entities expected injunctions would be harder to obtain and sought them less frequently. Landau, *supra*.

Data shows, however, that injunctions are still available to non-practicing entities in some circumstances. A 2016 analysis found that non-practicing entities were granted permanent injunctions 16% of the time, while practicing entities earned an injunction 80% of the time. Seaman, 101 Iowa L. Rev. at 1988. That disparity merely reflects that non-practicing entities are often unable to satisfy each of the four injunction factors. Indeed, Seaman found that non-practicing entities who had sought or were seeking to commercialize their patents—thus suffering irreparable harm from ongoing infringement—were able to win injunctions. *See id.* at 1988-89. Statistics from 2026 accord. Although non-practicing entities made few requests,

[5] https://patentprogress.org/2019/08/much-ado-about-injunctions/

those who did, and who were not patent assertion entities, won 78% of contested motions for a permanent injunction. *Redux*, *supra*. And even patent assertion entities won permanent injunctions 71% of the time. *Id.* In sum, courts are not applying *eBay* in a categorical manner that prohibits certain classes of patentees from winning injunctions. Instead, analysis of case results shows that courts are ably applying the traditional equitable test to case-specific facts and awarding injunctions where appropriate.

Nor has *eBay*'s more rigorous framework for injunctions negatively affected innovation. A study by Mezzanotti and Simcoe sought to measure the effect *eBay* had on American innovation, quantified using patent application data, research and development and venture capital investment, and productivity. Filippo Mezzanotti & Timothy Simcoe, *Patent Policy and American Innovation After* eBay*: An Empirical Examination*, 48 Research Policy 1271 (2019). The authors found that, following *eBay*, there was no decrease in U.S. patent applications; no clear decline in private or public company investment in research and development; and a small increase in total-factor productivity growth in patent-intensive industries. *Id.* at 1280-81. Other studies have reached similar findings. Helmers and Love, for example, found that firms with greater patent exposure significantly increased their research and development spending after *eBay*. Christian Helmers & Brian J. Love, *Patent Law Reform and Innovation: An Empirical Assessment of the Last 20 Years*,

79 Int'l Rev. L. & Econ. 1, 7 (2024). If anything, applying the equitable injunction analysis has improved innovation when measured in terms of general economic benefits, rather than the returns of patent assertion entities.

## CONCLUSION

The Court should affirm the district court's order denying Collision's request for a permanent injunction.

DATED: September 21, 2026

MUNGER, TOLLES & OLSON LLP

By: /s/ *Ginger D. Anders*


Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
Suite 500E
Washington, DC 20001
Tel: (202) 220-1100
Email: ginger.anders@mto.com

Evan Mann
MUNGER, TOLLES & OLSON LLP
560 Mission Street
27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000
Email: evan.mann@mto.com

*Counsel for Amici Curiae Acushnet Company; CrowdStrike, Inc.; Garmin International, Inc.; Google LLC; Intel Corporation; Microsoft Corporation; Roku, Inc.; SAP America, Inc.; SAS Institute Inc.*

Steven Callahan
CHARHON CALLAHAN
ROBSON & GARZA, PLLC
3333 Lee Parkway
Suite 460
Dallas, TX 75219
Tel: (214) 521-6400
Email: scallahan@ccrglaw.com

*Counsel for Amicus Curiae Cloudflare, Inc.*

Ashraf Fawzy
Tesla, Inc.
800 Connecticut Ave NW
5th Floor
Washington, DC 20006
Tel: (202) 905-9221
Email: afawzy@tesla.com

*Counsel for Amicus Curiae Tesla, Inc.*

Jennifer Librach Nall
DLA PIPER LLP (US)
303 Colorado Street
Suite 3000
Austin, TX 78701
Tel: (512) 457-7000
Email: jennifer.nall@us.dlapiper.com

*Counsel for Amicus Curiae Amazon.com, Inc.*

Mark C. Fleming
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Email: mark.fleming@wilmerhale.com

Steven J. Horn
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000
Email: steven.horn@wilmerhale.com

*Counsel for Amicus Curiae Verizon Communications Inc.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Circuit Rules 29(b) and 32(b)(1) because it contains 6968 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

DATED: September 21, 2026 By: /s/ *Ginger D. Anders*
Ginger D. Anders

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on September 21, 2026.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED: September 21, 2026

By: /s/ *Ginger D. Anders*
Ginger D. Anders