2026-1893

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

COLLISION COMMUNICATIONS, INC.,
*Plaintiff-Appellant*

v.

SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,
*Defendants-Appellees*

Appeal from the United States District Court for the Eastern District of Texas, No. 2:23-cv-00587-JRG, Judge J. Rodney Gilstrap

# BRIEF OF UNIFIED PATENTS, LLC AS *AMICUS CURIAE* IN SUPPORT OF APPELLEES SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC. AND IN SUPPORT OF AFFIRMANCE

Kelly R. Hughes
Jonathan Stroud
Roshan Mansinghani
Unified Patents, LLC
1015 15th Street NW,
Suite 629
Washington, DC 20005

*Counsel for Amicus Unified Patents, LLC*

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1893

**Short Case Caption** Collision Communications, Inc. v. Samsung Electronics Co.

**Filing Party/Entity** Unified Patents, LLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/21/2026

Signature: /s/ Kelly R. Hughes

Name: Kelly R. Hughes

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Unified Patents, LLC | | Unified Patents Acquisition, LLC |
| | | Unified Patents Holdings, LLC |
| | | Unified Patents Management, LLC |
| | | UP HOLDCO INC. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## Table of Contents

INTEREST OF AMICUS CURIAE ....................................................................5

INTRODUCTION AND SUMMARY OF ARGUMENT........................................7

ARGUMENT .................................................................................................8

I. This Appeal Is Part of a Coordinated, Well-Funded Effort to Overturn *eBay*..8

A. Collision's Litigation Strategy and the Surrounding Advocacy Reveal the Real Target Is *eBay* Itself ..............................................................................8

B. Notwithstanding the Government's Unusual Participation in this Matter, the District Court Correctly Applied *eBay* ..................................................10

II. Overturning *eBay* Would Threaten Innovation and the U.S. Patent System ..11

A. *eBay* Has Not Reduced Patent Value, Patenting Activity, or Investment in Patent Rights ........................................................................................11

B. Restoring Automatic Injunctions Would Hand NPEs Outsized Leverage, Harming Innovation, Competition, and Consumers—as the German Experience Confirms............................................................................................15

CONCLUSION ..........................................................................................17

## Table of Authorities

**Federal Cases**

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .............................7

**Statutes**

35 U.S.C. § 283 .......................................................................................8, 15

**Other Authorities**

Jonathan Stroud, *Patent Assertion Finance Is Big Business*, 15.3 Landslide 34 (Mar./Apr. 2023) .............................................................5

Sean Keller & Jonathan Stroud, *Litigation Funding Disclosure and Patent Litigation*, 33 Fed. Cir. B.J. 77 (2024) ...........................................5

Jonathan Stroud, *Pulling Back the Curtain on Complex Funding of Patent Assertion Entities*, 12.2 Landslide 20 (Nov./Dec. 2019) ................6

Unified Patents, *Litigation Annual Report*, https://portal.unifiedpatents.com/litigation/annual-report ..........................6

*Unified Patents, LLC v. Uniloc USA, Inc.*, No. IPR2018-00199, Paper 33, at 10 (P.T.A.B. May 31, 2019) ..................................................................6

Unified Patents, *Q1 2026 Patent Dispute Report*, https://www.unifiedpatents.com/insights/2026/4/14/patent-dispute-report-q1-2026 ..............................................................................6

S. 708, 119th Cong. (2025) ..........................................................................9

S. 4840, 118th Cong. (2024) ........................................................................9

Press Release, *Senator Coons, colleagues introduce bipartisan, bicameral bill to restore injunctive relief for patent infringement*, July 2024 (https://www.coons.senate.gov/news/press-releases/senator-coons-colleagues-introduce-bipartisan-bicameral-bill-to-restore-injunctive-relief-for-patent-infringement/) ...............................................9

Michael T. Renaud et al., *Return to Real (Pre-eBay) Injunctive Relief?*, Mintz (July 11, 2025) ........................................................................9

*Lex Machina Patent Litigation Report 2025*, 18 (June 2025) .........................11

Gene Quinn, *Patent Litigation in the United States, 1980 to 2020*, IPWatchdog (Nov. 4, 2021) ....................11

U.S. Patent & Trademark Office, *Fiscal Year 2025 Workload Tables*, Table 2 (patent applications) & Table 6 (issued patents)....................12

Unified Patents, *Patent Dispute Report: 2025 in Review* (Jan. 13, 2026) .......12

Westfleet Advisors, *The Westfleet Insider: 2024 and 2025 Litigation Finance Market Reports* ....................13

Christian Helmers & Brian J. Love, *Injunctions and Venture Capital: An Empirical Look at eBay's Effect on Startups*, 16 N.Y.U. J. Intell. Prop. & Ent. L. (forthcoming 2027) ....................13

Christian Heinze, *The EU Principle of Proportionality as a Limit to Injunctions in Patent Law*, 20 J. Intell. Prop. L. & Prac. 12, 775–782 (2025) ....................16

Mathieu Klos, *UPC Received 50% More Infringement Cases in 2025*, JUVE Patent (Feb. 17, 2026) ....................16

Statistisches Bundesamt (Destatis), *Gross Domestic Product 2025* (Jan. 2026) ....................17

U.S. Bureau of Econ. Analysis, *Gross Domestic Product (Third Estimate), 4th Quarter and Year 2024* (Mar. 27, 2025)....................17

U.S. Bureau of Econ. Analysis, *Gross Domestic Product (Third Estimate), 4th Quarter and Year 2025* (Apr. 9, 2026)....................17

## INTEREST OF *AMICUS CURIAE* [1]

Unified Patents, LLC is a membership organization dedicated to deterring non-practicing entities ("NPEs"), particularly patent assertion entities ("PAEs"), from extracting nuisance settlements from operating companies based on patents that are likely invalid.[2] Unified's 3,000-plus members are Fortune 500 companies, start-ups, automakers, retailers, cable companies, banks, financial services companies, technology companies, open source software developers, manufacturers, and others dedicated to reducing the drain on the U.S. economy of now-routine, baseless litigations asserting infringement of patents of dubious validity.

Unified and its counsel study the ever-evolving business models, financial backings, and practices of PAEs. *See, e.g.*, Jonathan Stroud, *Patent Assertion Finance Is Big Business*, 15.3 Landslide 34 (Mar./Apr. 2023); Sean Keller & Jonathan Stroud, *Litigation Funding Disclosure and Patent Litigation*, 33 Fed. Cir. B.J. 77

---

[1] All parties have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2). No parties' counsel authored this brief in whole or in part; neither party nor party counsel contributed money that was intended to fund preparing or submitting the brief; no person other than the *amicus curiae* or its counsel contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4).

[2] The ITC classifies universities, start-ups, and other potentially productive NPEs as "category-1" NPEs and classifies PAEs—companies whose "business model primarily focuses on purchasing and asserting patents"—as "category-2" NPEs. *See* International Trade Commission, *Section 337 Statistics: Number of Section 337 Investigations Brought by NPEs*, https://www.usitc.gov/intellectual_property/337_statistics_number_section_337_investigations.htm ("ITC Tracking Stats").

(2024); Jonathan Stroud, *Pulling Back the Curtain on Complex Funding of Patent Assertion Entities*, 12.2 Landslide 20 (Nov./Dec. 2019).

Unified conducts research monitoring ownership data, secondary-market patent sales, demand letters, post-issuance proceedings, and patent litigation to track PAE activity. *See, e.g.*, Unified Patents, *Litigation Annual Report*, https://portal.unifiedpatents.com/litigation/annual-report.

Unified also files post-issuance administrative challenges against PAE patents it believes are unpatentable or invalid. Thus, Unified seeks to deter the assertion of poor-quality patents. Unified acts and litigates independently from its members. *See, e.g.*, *Unified Patents, LLC v. Uniloc USA, Inc.*, No. IPR2018-00199, Paper 33, at 10 (P.T.A.B. May 31, 2019) (Unified members not real parties in interest to petitions filed by Unified); *id.* (collecting PTAB decisions). Since 2020, Unified Patents has had the highest success rate among top-volume *ex parte* reexam requestors with at least 20 decisions against utility patents, with success defined as at least one claim being canceled. Unified Patents, *Q1 2026 Patent Dispute Report*, https://www.unifiedpatents.com/insights/2026/4/14/patent-dispute-report-q1-2026.

Unified has a direct interest in the outcome of this appeal. Many of Unified's members are practicing companies that regularly face patent-infringement suits brought by non-practicing, licensing-only entities. Whether such entities may obtain permanent injunctions—as opposed to the substantial monetary damages already

available to them, as this case illustrates—directly affects the settlement leverage such entities can bring to bear against operating companies, the availability of products and product choice in the marketplace, and the cost of innovation across every industry Unified's members represent.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This appeal is not really about whether the district court misapplied *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), to a single, well-developed factual record. It is about whether this Court should abandon *eBay* altogether and revert back to the categorical rule *eBay* rejected twenty years ago: that the test for injunctions in patent cases should get special treatment and a patentee who proves infringement is presumptively entitled to a permanent injunction. Appellant Collision Communications, Inc. ("Collision") frames its appeal as a narrow correction of a discrete legal error in the district court's balance-of-hardships and public-interest analysis. But its briefing and the extensive advocacy surrounding this case reveal a far larger ambition: to convince this Court that patentees are entitled to an injunction upon a finding of infringement, full stop.

Unified Patents, LLC files this brief because its more than 3,000 members—operating companies across nearly every sector of the economy—have a direct stake in whether the four-factor equitable framework that has governed patent injunctions for two decades survives this appeal intact, and because this case is one of several

coordinated efforts, in Congress, in public advocacy, and now in the courts, to undo *eBay*.

As explained in this brief, overturning *eBay*, or narrowing the Federal Circuit's application of it, would threaten innovation and the U.S. patent system far beyond this one dispute. As explained in Part I, this appeal is one of several recent efforts, several of them backed by the same litigation-funding interests, to use government intervention and public advocacy to manufacture a record for reinstating automatic injunctions. As explained in Part II, handing patent-assertion entities that leverage would not encourage innovation; it would give every non-practicing entity outsized settlement leverage over practicing companies who provide real goods and services to American businesses and consumers, and impose exactly the "hold-up" costs *eBay* sought to prevent. This Court should affirm.

## ARGUMENT

### I. This Appeal Is Part of a Coordinated, Well-Funded Effort to Overturn *eBay*

#### A. Collision's Litigation Strategy and the Surrounding Advocacy Reveal the Real Target Is *eBay* Itself

In the years since *eBay*, a well-funded campaign has sought and failed to legislate *eBay* away; they are now trying to litigate around the Supreme Court. Most recently, in 2024 and 2025, the RESTORE Patent Rights Act was proposed to amend 35 U.S.C. § 283 to create "a rebuttable presumption that the court should grant a

permanent injunction" upon a final judgment of infringement—in substance, a legislative reversal of *eBay*'s central holding. S. 708, 119th Cong. (2025); S. 4840, 118th Cong. (2024). It failed. Various interest groups and spokesmen have provided support to overturn *eBay*: the Innovation Alliance, the Council for Innovation Promotion, the Alliance of U.S. Startups & Inventors for Jobs, Conservatives for Property Rights, and prominent individuals, including former USPTO Directors David Kappos and Andrei Iancu and retired Federal Circuit Chief Judge Paul Michel. *See* Press Release, *Senator Coons, colleagues introduce bipartisan, bicameral bill to restore injunctive relief for patent infringement*, July 2024 (https://www.coons.senate.gov/news/press-releases/senator-coons-colleagues-introduce-bipartisan-bicameral-bill-to-restore-injunctive-relief-for-patent-infringement/). Likewise, interested members of the bar have offered their support. For example, a July 2025 client alert from Mintz Law Firm argued that *eBay* and its progeny have made injunctions too difficult to obtain, and pointed approvingly to recent government intervention as a sign the tide may be turning. Renaud, et al., *Return to Real (Pre-eBay) Injunctive Relief?* (https://www.mintz.com/insights-center/viewpoints/2231/2025-07-11-return-real-pre-ebay-injunctive-relief). Several of these interest groups and advocates have appeared as amici in this very appeal in support of Collision's position. The same voices who have failed to garner the requisite broad appeal to legislatively

overturn *eBay* are now asking this Court to reach the same result through adjudication.

The coordinated effort from these groups and individuals is what distinguishes this case from an ordinary patent appeal. Collision is not simply arguing that the district court weighed the equities incorrectly on this record; it is asking this Court to recreate the automatic-injunction rule the Supreme Court has already rejected and that Congress has repeatedly declined to adopt. This Court should recognize and reject this strategy, funded by those who benefit from more litigation, not more innovation.

### B. Notwithstanding the Government's Unusual Participation in this Matter, the District Court Correctly Applied *eBay*

This is not the first time Samsung has faced a coordinated push to obtain injunctive leverage from patents that a jury had already valued in dollars. In 2024, Radian Memory Systems LLC and an affiliated holding entity, formed and managed by an affiliate of Fortress Investment Group (a well-known litigation funder), sued Samsung and moved for a preliminary injunction. Unusually, in what is reportedly the first such filing in district court patent litigation in twenty years, the U.S. Patent and Trademark Office filed a Statement of Interest supporting Radian's ability to obtain injunctive relief notwithstanding its status as a non-practicing entity. That case settled and no injunction was entered.

The government filed a similar Statement of Interest in this case on February 27, 2026, again supporting non-practicing entities. Notwithstanding this filing, the district court applied the correct legal standard and properly denied an injunction to a licensing-only patentee already compensated by a nine-figure verdict. That is a straightforward application of two decades of settled law, not a departure from it. As in the district court, the government's unusual interest should not hold sway. The proper avenue for a policy disagreement with *eBay* is the legislative process, not a case-by-case campaign to persuade courts to reach the same result by reading *eBay* out of existence.

## II. Overturning *eBay* Would Threaten Innovation and the U.S. Patent System

### A. *eBay* Has Not Reduced Patent Value, Patenting Activity, or Investment in Patent Rights

Collision's amici are likely to argue that *eBay*'s discretionary framework has devalued patents and chilled innovation, but the evidence does not support that claim. If injunctive relief was necessary to support patents and innovation, then one would expect to find patentees litigating to judgment in pursuit of injunctive leverage. Yet the overwhelming majority of patent infringement suits never reach trial, let alone a final judgment. According to Lex Machina, "in the past three years, about 90% [of patent cases] were resolved through settlements or procedural rulings." *Lex Machina Patent Litigation Report 2025*, 18 (June 2025); *see also*, Gene Quinn,

*Patent Litigation in the United States, 1980 to 2020*, IPWatchdog (Nov. 4, 2021) (patent trials ranging from roughly 63 to 164 per year against thousands of patent suits filed annually). That is a tell that patent monetizers are only looking for the threat of injunction to bolster settlement positions. Patent disputes are, in this sense, unusually well suited to resolution through licensing and monetary exchange rather than injunctive relief, which is precisely why *eBay* directed courts to ask, in each case, whether money damages are adequate before granting the extraordinary remedy of an injunction.

Nor has the reduced availability of injunctions for licensing entities suppressed patenting activity, patent assertion, or investment in patent rights. To the contrary, every single one of these has grown substantially since *eBay*. U.S. utility patent applications and grants have both grown considerably in the two decades since 2006. *See, e.g.*, U.S. Patent & Trademark Office, *Fiscal Year 2025 Workload Tables*, Table 2 (patent applications) (noting 417,453 utility applications filed in 2006 and 611,540 filed in 2025) & Table 6 (issued patents) (noting 162,509 utility patents issued in 2006 and 327,665 issued in 2025). Patent assertion has grown as well: district courts saw 4,531 new patent cases filed in 2025—a 12% increase over 2024—with non-practicing entities responsible for more than half of all filings and more than 90% of high-tech patent litigation. *See* Unified Patents, *Patent Dispute Report: 2025 in Review* (Jan. 13, 2026). And the litigation-funding industry, which

exists specifically to monetize the expected value of patent assertion, has continued to grow: patent matters made up the largest single category of litigation-finance capital commitments in 2024, and overall commitments to litigation finance rose roughly 23% in 2025 following two years of contraction. *See* Westfleet Advisors, *The Westfleet Insider: 2024 and 2025 Litigation Finance Market Reports*. If *eBay* chills patent filings, why are we seeing record patent application filings and issuances? If *eBay* chills litigation, why are we seeing record levels of litigation? If patent values were dwindling, why are we seeing record investment in patent assertion entities? Or is the call to overturn *eBay* merely the consequence of highly successful non-practicing entities reinvesting banner winnings by funding various interest groups and individuals to bolster their campaign to gain additional leverage? In any event, the rise in patent grants and investment in for-profit litigation is not what one would expect if *eBay* had made patents less valuable or discouraged innovation. Instead of chilling innovation or suppressing patent value, these market indicators demonstrate that patent rights remain robust, lucrative, and highly attractive to commercial investors under *eBay*'s equitable standard.

Indeed, no evidence supports the claim that *eBay* has been harmful to small, innovative companies. A recent empirical study of venture-backed startups (the segment of the economy critics argue is most exposed to *eBay*'s supposed harms) found no evidence to support the critics of *eBay*. *See* Christian Helmers & Brian J. Love,

*Injunctions and Venture Capital: An Empirical Look at eBay's Effect on Startups*, 16 N.Y.U. J. Intell. Prop. & Ent. L. (forthcoming 2027). Comparing startups in the technology sectors most affected by *eBay*'s reduction in injunction grant rates to similarly situated startups in unaffected sectors, the study found no evidence that the affected startups were more likely to fail, less likely to raise additional venture capital, or slower to grow. Moreover, the study found that, if anything, there was evidence of relatively stronger growth in valuation and deal size among medical-technology startups. *Id.* As the authors conclude, the data "provide[] little empirical support for the claim that *eBay* broadly harms venture-backed startups and therefore should be reversed or legislatively abrogated on policy grounds." *Id.*

The absence of an injunction does not mean a patentee goes uncompensated, but rather that the patentee is compensated in dollars rather than leverage, and the present case proves the point. Collision is a licensing-only entity that has never sold a competing product, and a jury awarded it $445,494,160 as a running reasonable royalty. In short, *eBay*'s framework ensures that licensing entities receive full economic compensation, as Collision's massive royalty verdict demonstrates, without granting them the disproportionate leverage to hold operating businesses hostage. Economic damages, not injunctions, are the remedy patent law has always used to compensate licensing-only patentees, and nothing about *eBay* has changed that.

### B. Restoring Automatic Injunctions Would Hand NPEs Outsized Leverage, Harming Innovation, Competition, and Consumers—as the German Experience Confirms

The real-world consequence of restoring a presumptive right to injunctions would not be more innovation; it would be more leverage for patent-assertion entities to extract settlements far *beyond what a jury has already determined their patents are worth*. An injunction threat against a company that has already built, marketed, and sold a product is categorically different from an injunction against a competitor: it does not restore a market position the patentee lost, because licensing-only entities like Collision have no competing product to protect. Instead, it gives the patentee the ability to hold an operating company's product hostage, including products that only incorporate the patented technology as a small component of a much larger, more complex device, in order to extract a settlement premium beyond the damages a jury has already awarded. That is precisely the "hold-up" dynamic *eBay*'s concurring Justices warned against, and precisely what Congress wanted to avoid when it made 35 U.S.C. § 283 an equitable remedy rather than a guaranteed one. Handing that leverage to every patent-assertion entity (who provide no goods or services to American consumers) would not encourage innovation; it would tax it by increasing the cost of participating in the real market. The legal system should encourage companies to build, sell, and invest in useful products for the American economy; it

should not permit the patent system to be turned into a mechanism for private taxation.

We should not forget that *eBay* was an *improvement* in the US patent landscape; it is an advantage over other countries. Foreign markets have not fared well under strong injunction regimes. Germany has long applied something close to an automatic injunction rule, with German courts typically granting injunctions upon a finding of infringement. The German government recognized that its injunction regime was a drain on the economy and passed a 2021 reform that added a statutory proportionality defense. However, that reform failed to be aggressive enough. One recent empirical analysis found that German courts have not granted that proportionality defense in a single reported case since the reform took effect. *See* Christian Heinze, *The EU Principle of Proportionality as a Limit to Injunctions in Patent Law*, 20 J. Intell. Prop. L. & Prac. 12, 775-782 (2025). The failure in the reform to the burdensome injunction regime has put patent-assertion entities on notice: commentary on European patent litigation has described licensors gravitating toward Germany and the Unified Patent Court. *See* Mathieu Klos, *UPC Received 50% More Infringement Cases in 2025*, JUVE Patent (Feb. 17, 2026).

Whatever else that comparison shows, it does not show that a stronger injunction regime produces a stronger innovation economy. During the same period that German courts continued to grant injunctions as a matter of course, the German

economy contracted for two consecutive years and grew only marginally in 2025, while the U.S. economy, operating under *eBay*'s discretionary, no-presumption framework, grew at a substantially faster rate. *Compare* Statistisches Bundesamt (Destatis), *Gross Domestic Product 2025* (Jan. 2026) (German GDP: –0.9% in 2023, –0.5% in 2024, +0.2% in 2025), *with* U.S. Bureau of Econ. Analysis, *Gross Domestic Product (Third Estimate), 4th Quarter and Year 2024* (Mar. 27, 2025) (U.S. GDP: +2.4% in 2024) & *Gross Domestic Product (Third Estimate), 4th Quarter and Year 2025* (Apr. 9, 2026) (U.S. GDP: +2.1% in 2025). No single variable explains a national economy's performance, and amicus does not suggest patent-injunction policy caused either country's growth rate. But the comparison at least refutes any suggestion that an automatic injunction regime is necessary or even helpful to a healthy innovation economy. If it were, Germany's experience over the last several years should look very different than it does.

For all these reasons, this Court should resist the invitation to relitigate *eBay*, and should affirm the district court's straightforward, correct application of it.

## CONCLUSION

For the foregoing reasons, amicus curiae Unified Patents, LLC respectfully requests that this Court affirm the district court's denial of Collision's motion for a permanent injunction.

Respectfully submitted,

By: _/s/ Kelly R. Hughes_
Kelly R. Hughes
Roshan Mansinghani
Jonathan Stroud
Unified Patents, LLC
1015 15th Street NW,
Suite 629
Washington, DC 20005

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. Cir. R. 29. It contains 2921 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

*/s/ Kelly R. Hughes*
Kelly R. Hughes

## CERTIFICATE OF SERVICE

I hereby certify that, on September 21, 2026, I caused to be electronically filed the foregoing **BRIEF OF UNIFIED PATENTS, LLC AS AMICUS CURIAE IN SUPPORT OF APPELLEES SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC., AND IN SUPPORT OF AFFIRMANCE** using the Court's CM/ECF filing system.

I certify that all counsel of record in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system. *See* Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).

*/s/ Kelly R. Hughes*
Kelly R. Hughes