**No. 26-1893**

United States Court of Appeals
for the Federal Circuit

COLLISION COMMUNICATIONS, INC.,
*Plaintiff-Appellant*
*v.*

SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,
*Defendants-Appellees*

On Appeal from the U.S. District Court for the Eastern District of Texas in No. 2:23-cv-00587-JRG, Judge J. Rodney Gilstrap

# CORRECTED BRIEF OF US*MADE, NATIONAL RETAIL FEDERATION, AND THE COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION IN SUPPORT OF SAMSUNG AND AFFIRMANCE

Joseph Matal
CLEAR IP, LLC
888 16th St., NW
Suite 300
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amici Curiae*

September 22, 2026

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for amici certifies that:

1. The full names of the parties that I represent are the US Manufacturers Association for Development and Enterprise, National Retail Federation, and the Computer & Communications Industry Association.
2. There are no real parties in interest of parties that I represent.
3. There are no parent corporations or publicly held companies that own ten percent or more of the stock of the parties that I represent.
4. No other law firms, partners, or associates who have not entered an appearance in this appeal either appeared for the parties that I represent in the originating court or are expected to so appear in this Court.
5. I do not know of any case in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case.
6. No disclosure regarding organizational victims in criminal cases or debtors or trustees in bankruptcy cases is required under Fed. R. App. P. 26.1(b) or (c).

September 22, 2026 *<u>/s/ Joseph Matal</u>*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... II

**INTEREST OF AMICI CURIAE** .......... VII

**ARGUMENT** .......... 1

**I. Collision seeks an injunction for settlement leverage rather than to protect a market.** .......... 1

**II. Injunctions historically were denied to patent plaintiffs who sought them for negotiation leverage rather than to protect a market.** .......... 4

**A. *Continental Paper Bag*, in which the patent owner was granted an injunction to protect its market from infringing alternatives, is not to the contrary.** .......... 19

**III. Collision has adequate remedies for future infringement that obviate the need for an injunction.** .......... 27

**IV. Policy arguments against *eBay* lack merit.** .......... 29

**CONCLUSION** .......... 32

## TABLE OF AUTHORITIES

### CASES

*Allington & Curtis Mfg. Co. v. Booth*, 78 F. 878 (2d Cir. 1897) ........25

*American Safety Device Co. v. Kurland Chem. Co.*, 68 F.2d 734 (2d Cir. 1934).........................................................................26

*Ballard v. City of Pittsburgh*, 12 F. 783 (C.C.W.D. Pa. 1882) ..........17

*Bonsack Mach. Co. v. Smith*, 70 F. 383 (C.C.W.D.N.C. 1895) .........24

*Brick v. Staten Island Railway Co.*, 25 F. 553 (C.C.S.D.N.Y. 1885).12

*Broadnax v. Central Stock-Yard & Transit Co.*, 4 F. 214 (C.C.D.N.J. 1880) ...........................................................................24

*Brodrick Copygraph Co. of New Jersey v. Mayhew*, 131 F. 92 (C.C.E.D. Wis. 1904) .....................................................22

*Carr v. Rice*, 5 F. Cas. 140 (C.C.S.D.N.Y. 1856)............................24

*Columbia Wire Co. v. Freeman Wire Co.*, 71 F. 302 (C.C.E.D. Mo. 1895) ...........................................................................24

*Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405 (1908) .......................................................... 19, 20, 21, 26

*Crown Cork & Seal Co. of Baltimore City v. Aluminum Stopper Co. of Baltimore* City, 108 F. 845 (4th Cir. 1901)................................21

*Dorsey Harvester Revolving Rake Co v. Marsh*, 7 F. Cas. 939 (C.C.E.D. Pa. 1873) ...................................................17

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ................. 4

*Edison Elec. Light Co v. Mount Morris Elec. Light Co.*, 57 F. 642 (C.C.S.D.N.Y. 1893)...............................................22

*Edison Elec. Light Co. v. Mt. Morris Elec. Light Co.*, 58 F. 572 (2d Cir. 1893) ...........................................................................22

*Electric Smelting & Aluminum Co. v. Carborundum Co.*, 189 F. 710 (C.C.W.D. Pa. 1900) ....................16

*Forbush v. Bradford*, 9 F. Cas. 422 (C.C.D. Mass. 1858) ...........9, 16

*Foster v. Am. Mach. & Foundry* Co., 492 F.2d 1317 (2d Cir. 1974).27

*Fuller v. Berger*, 120 F. 274 (7th Cir. 1903)....................22

*Greenwood v. Bracher*, 1 F. 856 (C.C.D.N.J. 1880)..................13, 29

*Hartman v. John D. Park & Sons Co.*, 145 F. 358 (C.C.E.D. Ky. 1906) ....................23

*Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co.*, 77 F. 288 (6th Cir. 1896)....................22

*Hoe v. Boston Daily Advertiser Corp.*, 14 F. 914 (C.C.D. Mass. 1883) .................... 8

*Hoe v. Miehle Printing Press & Mfg. Co.*, 141 F. 112 (C.C.S.D.N.Y. 1905) ....................22

*Howe v. Morton*, 12 F. Cas. 663 (C.C.D. Mass 1860) ....................12

*In re Brosnahan*, 18 F. 62 (C.C.W.D. Mo. 1883) ....................25

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 831 F. Supp. 1354 (N.D. Ill. 1993) ....................26

*Indiana Mfg. Co. v. J. I. Case Threshing Mach. Co.*, 154 F. 365 (7th Cir. 1907)....................24

*Kane v. Huggins Cracker & Candy Co.*, 44 F. 287 (W.D. Mo. 1890) 14

*Lamson Consol. Store Serv. Co v. Hillman*, 123 F. 416 (7th Cir. 1903) ....................21

*Landis Tool Co v. Ingle*, 286 F. 5 (3d Cir. 1923) ....................26

*Masseth v. Johnston*, 59 F. 613 (C.C.W.D. Pa. 1894)....................21

*McCrary v. Pa. Canal Co.*, 5 F. 367 (C.C.E.D. Pa. 1880)..........17, 28

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) .......... 4

*Morris v. Lowell Mfg. Co.*, 17 F. Cas. 822 (C.C.D. Mass. 1866) ...6, 10

*National Automatic Weighing Mach Co v. Daab*, 136 F. 891 (C.C.D.N.J. 1905) ....24

*National Hat-Pouncing Machine Co. v. Hedden*, 29 F. 147 (D.N.J. 1886) ....13

*Nerney v. New York, N. H. & H. R. Co.*, 83 F.2d 409 (2d Cir. 1936) ....26, 29

*New York Grape Sugar Co. v. Am. Grape Sugar Co.*, 10 F. 835 (C.C.N.D.N.Y. 1882)....14, 15, 29

*NTP Inc. v. Research in Motion, Ltd.*, No. 3:01-cv-00767-JRS (E.D. Va. Nov. 21, 2001).... 2

*O.H. Jewell Filter Co. v. Jackson*, 140 F. 340 (8th Cir. 1905) ....25

*Overweight Counterbalance Elevator Co. v. Cahill & Hall Elevator Co.*, 86 F. 338 (C.C.N.D. Cal. 1898) ....11

*Palmer v. Mills*, 57 F. 221 (C.C.D. Conn. 1893) ....11

*Parker v. Sears*, 18 F. Cas. 1159 (C.C.E.D. Pa. 1850)....7, 10

*Pitts v. Wemple*, 19 F. Cas. 762 (C.C.N.D. Ill. 1855)....24

*Railway Appliances Co v. Munroe*, 147 F. 241 (7th Cir. 1906)....25

*Ransom v. City of New York*, 20 F. Cas. 286 (C.C.S.D.N.Y. 1856)...24

*Rubber Tire Wheel Co. v. Milwaukee Rubber Works Co.*, 154 F. 358 (7th Cir. 1907) ....24

*Rupp & Wittgenfeld Co. v. Elliott*, 131 F. 730 (6th Cir. 1904)....22

*Sanders v. Logan*, 21 F. Cas. 321 (C.C.W.D. Pa. 1861)....5, 13

*Smith v. Sands*, 24 F. 470 (W.D. Mich. 1885)....10

*Special Equip. Co. v. Coe*, 324 U.S. 370 (1945).... 4

*Stainthorp v. Humiston*, 22 F. Cas. 1035 (C.C.N.D.N.Y. 1862)..15, 28

*Stearns-Roger Mfg. Co. v. Brown*, 114 F. 939 (8th Cir. 1902) .........25

*Taggart v. Lorenzen*, 587 U.S. 554 (2019) ....................................18

*Trump v. Cook*, 146 S. Ct. 2234 (2026) .........................................18

*U.S. Consol. Seeded Raisin Co. v. Griffin & Skelley Co.*, 126 F. 364 (9th Cir. 1903) .............................................................................24

*U.S. Fastener Co. v. Bradley*, 149 F. 222 (2d Cir. 1906).................25

*United States v. Dixon*, 509 U.S. 688 (1993).................................18

*United States v. Winslow*, 227 U.S. 202 (1913).............................20

*Victor Talking Mach. Co. v. The Fair*, 123 F. 424 (7th Cir. 1903).....23

*White v. Peerless Rubber Mfg. Co.*, 111 F. 190 (C.C.W.D. Pa. 1901) ...............................................................................................24

*Whitney v. Emmett*, 29 F. Cas. 1074 (C.C.E.D. Pa. 1831) .............25

*Wintermute v. Redington*, 30 F. Cas. 367 (C.C.N.D. Ohio 1856) .....24

*Wirt v. Hicks*, 46 F. 71 (C.C.S.D.N.Y. 1891).................................24

*Wyckoff v. Wagner Typewriter Co.*, 88 F. 515 (C.C.S.D.N.Y. 1898) .24

**OTHER AUTHORITIES**

Christian Helmers & Brian Love, Injunctions and Venture Capital: An Empirical Looks at *eBay*'s Effect on Startups," 16 N.Y.U. J. INTELL. PROP. & ENT. L. (forthcoming 2027) ...........................31

Christopher Beauchamp, The First Patent Litigation Explosion, 125 Yale L.J. 848 (2016) ........................................................... 4

James L. High, A Treatise on the Law of Injunctions (4th ed. 1905) ...............................................................................................18

Much Ado About Injunctions: Redux, PatentProgress, Sept. 12, 2026 .....................................................................................30

United States Constitution, Article I, § 8, Clause 8 ......................32

## INTEREST OF AMICI CURIAE

The U.S. Manufacturers Association for Development and Enterprise is a nonprofit association representing companies manufacturing diverse goods in the United States.[1]

National Retail Federation is the world's largest retail trade association, representing retailers of all sizes, formats, and channels of distribution and spanning all industries.

The Computer & Communications Industry Association is an international, not-for-profit trade association representing a broad cross section of communications and technology firms.

Amici believe that their brief may aid the Court in deciding the whether to continue to apply traditional equitable principles and its own precedents when evaluating requests for permanent injunction in patent cases.

[1] No counsel for any party wrote any part of this brief. No party other than amici curiae's members contributed money that was intended to fund the preparation or submission of this brief. Although Samsung is a member of US*MADE, it did not participate in the decision to file this brief. Samsung and Collision have consented to the filing of this brief.

## ARGUMENT

### I. Collision seeks an injunction for settlement leverage rather than to protect a market.

It is undisputed that Collision Communications does not supply the market with any goods or services. Nor does it plan to do so in the future. And there is no risk to Collision of lost sales, price erosion, loss of brand reputation or goodwill with customers, or other harms from which an injunction would protect it.

An injunction by itself would be useless to Collision. Collision seeks an injunction only to leverage it against Samsung in settlement negotiations. Nothing would be less permanent than a "permanent" injunction granted to Collision—Collision would immediately sell the injunction back to Samsung for money.

The district court recognized as much during the hearing on Collision's motion for equitable relief:

> In the real world, it's all about obtaining judgments that can be paid in large sums of money. And, you know, I don't think it's any secret here that part of what Collision is seeking is injunctive relief not so much to stop any future infringement but as to force Samsung to pay this $445 million judgment that they have against them and

> perhaps enter into a negotiation for a license as to this patent that would include additional payments.[2]

The monetary settlement that Collision would receive in exchange for an injunction would reflect something far different from the substantial compensatory damages that it has already been awarded. Such a settlement would not correspond to the value of the claimed invention, but the damage that an injunction would inflict on Samsung's business.

An example illustrates how automatic injunctions were used during the pre-*eBay* era, when they were awarded to entities that did not have a market to protect. During the patent litigation against BlackBerry in the early-2000s by non-practicing entity NTP, a jury found the asserted patents infringed and awarded compensatory damages of $23,188,570.90.[3] Several years later, after an appeal and remand, the district court made clear that it would issue an

---

[2] Transcript of May 11, 2026 hearing in *Collision Commc'ns, Inc. v. Samsung Elecs. Co.*, No. 2:23-CV-587-JRG, at 59. Collision itself largely acknowledged that it would sell the injunction back to Samsung; it noted that "[i]f the Court were to grant an injunction, . . . Samsung would be confronted with the loss of that technology. And if they wanted to regain that technology, they can do what they should have done years ago, which is approach Collision [and] seek our permission to use our technology." *Id.* at 28-29.

[3] *See NTP Inc. v. Research in Motion, Ltd.*, No. 3:01-cv-00767-JRS (E.D. Va. Nov. 21, 2001) (docket no. 260).

automatic injunction. Defendant Research in Motion then settled the lawsuit with NTP for $612,500,000[4]—an amount approximately 25 times that of the jury's assessed value of the invention.

An injunction would indeed be valuable to Collision, but only as settlement leverage. Collision does not face the type of competitive harm against which an injunction protects.

[4] *See id.* at docket nos. 463 and 464 (Mar. 3, 2006).

## II. Injunctions historically were denied to patent plaintiffs who sought them for negotiation leverage rather than to protect a market.

A patent owner's failure to practice its claimed invention "does not affect the validity of the patent"[5] and there is no "categorical rule" against granting an injunction to a patent owner that has declined to use its patent.[6]

On the other hand, "[a]n injunction is a drastic and extraordinary remedy;"[7] courts carefully regulate the conditions under which one is granted. Courts of equity first began to address the unique issues posed by non-practicing patent owners' requests for injunctive relief during the second half of the nineteenth century, when developments in patent litigation began to raise these issues.[8] The key principle that emerged from this era is that injunctions are properly used to protect goods and services from infringing competition—not to punish the infringer or create economic leverage in settlement negotiations.

---

[5] *Special Equip. Co. v. Coe*, 324 U.S. 370, 378-79 (1945).

[6] *eBay Inc.*, 547 U.S. at 393. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006).

[7] *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).

[8] *See generally* Christopher Beauchamp, The First Patent Litigation Explosion, 125 Yale L.J. 848 (2016).

A leading early decision is *Sanders v. Logan*, 21 F. Cas. 321 (C.C.W.D. Pa. 1861), which was written by U.S. Supreme Court Justice Grier riding circuit. The patent owner in that case broadly licensed its invention. The court, finding that an injunction would be of "no use to the complainant and ruinous to the defendant," denied the patent owner's request for such relief. The court acknowledged that "[t]here are many cases of patents where [an injunction] is the only efficient remedy to protect the patentee." But it held that an injunction should be granted "only for prevention or protection"—not when "only used for extortion or vengeance:"

> The bill prays for an injunction and an account; and yet admitting the validity of the patent and its infringement by respondents, it is clear that, as a proper remedy for the injury complained of, neither an injunction nor an account is necessary or proper. The invention claimed is for an improvement in the machinery of grist mills, and the only injury to plaintiff's rights exists not in using his invention, for it is his interest that all mills should adopt and use it, provided he is paid the price of a license. Such price or value of a license is the true measure of the 'actual damage' suffered, and of the remedy which the patentee can obtain, or has a right to claim in equity. A court of law may treble such a verdict where the defendant has acted wantonly or vexatiously. Where the measure of damage is a certain sum, and does not require an account of profits, the peculiar jurisdiction of a chancellor is not needed for that purpose. The remedy by injunction is neither necessary nor proper to enforce the payment of money. It is true that injunctions are now more liberally granted than in former times, yet the granting or refusal of them rests in the sound discretion of the court. A rash or

> indiscreet exercise of this power may be very oppressive, of no use to the complainant and ruinous to the defendant. As a remedy, it should be administered only for prevention or protection. Where it is not necessary for these purposes, it is merely vindictive, injuring one party without benefit to the other. There are many cases of patents where it is the only efficient remedy to protect the patentee, and prevent continuing trespasses on his rights. But there are others in which it answers neither purpose, and is only used for extortion or vengeance.[9]

Other decisions of this era also enforce a prohibition on the use of injunctions as leverage to compel a settlement. *Morris v. Lowell Mfg. Co.*, 17 F. Cas. 822 (C.C.D. Mass. 1866) (citations omitted), involved a patent owner that faced "the loss of their royalty and not a damaging and constantly increasing competition." *Id.* at 823. The patent owner nevertheless requested an injunction, arguing that "the controversy would practically end now" in view of "the injury to the manufacturers which would follow an injunction." *Id.* The court rejected this argument, holding that "it is no part of [an injunction's] legitimate office to stop litigation in the suit in which it is granted, or to force the compromise of a disputed right." *Id.*

*Parker v. Sears*, 18 F. Cas. 1159 (C.C.E.D. Pa. 1850), also condemned the use of patent injunctions to compel settlement. The court found that the requested injunction "would cause great and

---

[9] *Sanders v. Logan*, 21 F. Cas. at 322-23.

irreparable injury" to the defendants with "no corresponding benefit to the plaintiff." Contrasting situations in which "the source of profit to the patentee arises from his monopoly of the articles, and having no competitors in the market," the court concluded that allowing the non-practicing patentee in that case to use an injunction to "coerc[e] a compromise" would amount to "abuse:"

> With regard to the last ground of objection to granting the present motions, we would remark—the chief object of issuing such writs before the final hearing of the cause, is, to prevent irreparable mischief, not to give the complainant the means of coercing a compromise on his own terms, from the inevitable injury that defendants must suffer by the stoppage of their mills and manufactories.
>
> To suddenly stop one hundred mills and manufactories, by injunctions issued at this time, would cause great and irreparable injury, not only to the defendants, but to the public at large, and be of no corresponding benefit to the plaintiff, whose interest it is that they should use his invention if they pay him for it. The plaintiff can be compensated by damages, if the defendants shall be found to have infringed his patent, and they are amply able to pay both damages and costs.
>
> There may be, and often are, cases where the patent is for a machine to make some articles of manufacture, or merchandise, in a cheaper method than was before known, and where the source of profit to the patentee arises from his monopoly of the articles, and having no competitors in the market. In such a case, the damage to the patentee by a piracy of his invention might be very great, and the court would issue an injunction on a plain case in the last month or week of the patent's life, or even after the time limited for its expiration, to restrain the sale

> of the machines, or articles piratically manufactured in violation of the patent, while it was in force. But, in this case, the injunction cannot benefit the plaintiff, except by its abuse.[10]

Similarly, *Hoe v. Boston Daily Advertiser Corp.*, 14 F. 914 (C.C.D. Mass. 1883), rejected the use of a patent injunction as negotiation leverage. The court concluded that an injunction "would cause much expense to the defendants," but would not "be of any advantage to the plaintiffs, except to coerce a settlement:"

> The improvement in question is but part of a large machine, upon which the daily newspaper of the defendants is printed, and a change of this part of it, though possible, is difficult, and might embarrass the usual course of business of the company, and would cause much expense to the defendants, or, rather, to their guarantors. Nor would it be of any advantage to the plaintiffs, except to coerce a settlement, for they do not use printing machines, but make and sell them in the market. Whatever they are entitled to in the way of damages, amounts, in effect, to a royalty. Their real damage was suffered when this machine was bought, and is not affected by the amount or duration of its use. Acting on this view of the matter, the parties have been negotiating for the payment of a license fee, but are very far apart in their estimate of its amount. The only advantage which the plaintiffs could derive from an injunction, would be to put them in a better situation than they are now in, or than the defendants will then be in for the further conduct of the negotiation.[11]

---

[10] *Parker v. Sears*, 18 F. Cas. at 1162-63.

[11] *Hoe v. Boston Daily Advertiser Corp.*, 14 F. at 915.

Decisions from the nineteenth century emphasized that the proper role of an injunction is to protect a patent owner against competitive injury—from being "deprive[d] of a monopoly" and facing "increasing competition and loss of profits." *Forbush v. Bradford*, 9 F. Cas. 422 (C.C.D. Mass. 1858), which was written by Justice Curtis riding circuit, denied an injunction that was sought against a defendant that did not make products that competed with the patent owner's products, and thus was not causing the type of injury for which an injunction is the appropriate remedy:

> The defendants in these cases do not make and sell looms having the patented improvement; they only use in their mills certain numbers of such looms. The complainants are makers of looms, but do not use them. So that this particular mode of infringement by the use of the thing patented, though it is a violation of the exclusive right claimed by the complainants, does not deprive them of a monopoly which they desire to retain in their own hands, because practically, it deprives them only of what they would be entitled to receive for a license to use the thing patented. Nor does it, like the manufacture and sale of the thing patented, constantly widen the field of litigation, and render it more and more difficult for the complainants to vindicate their rights.[12]

Similarly, *Smith v. Sands*, 24 F. 470 (W.D. Mich. 1885), denied an injunction to a patent owner because "[t]he infringement is not one where there is a damaging and constantly increasing competition

---

[12] *Forbush v. Bradford*, 9 F. Cas. at 422.

and loss of profits, and hence there is no irreparable injury to the complainants." *Id.* at 472; *see also Parker v. Sears*, 18 F. Cas. 1159, 1163 (C.C.E.D. Pa. 1850) (denying an injunction while noting that "[t]here may be, and often are, cases . . . where the source of profit to the patentee arises from his monopoly of the articles, and having no competitors in the market. In such a case, the damage to the patentee by a piracy of his invention might be very great, and the court would issue an injunction."); *Morris v. Lowell Mfg. Co.*, 17 F. Cas. 822, 823 (C.C.D. Mass. 1866) (discussed *supra*; denying an injunction while noting it would be available where "the injury to the plaintiffs is . . . a damaging and constantly increasing competition").

Early American equity courts broadly denied injunctions to prevailing patent owners who had no market in goods or services to protect and whose primary business was simply licensing their patents:

- *Overweight Counterbalance Elevator Co. v. Cahill & Hall Elevator Co.*, 86 F. 338 (C.C.N.D. Cal. 1898), denied an injunction to the owner of a patent for "an improvement in elevators," finding that the plaintiff had "established a royalty or license fee of $250 for each elevator in which is used the invention covered by the

patent in suit." *Id.* at 339. The court concluded that "it is clear that damages in an amount equal to the license fee thus established, multiplied by the number of infringing elevators which the defendant corporation may manufacture during the pendency of this action if not restrained, would fully compensate the complainant for any injury which it would suffer by reason of the threatened action of said defendant." *Id.*; *see also id.* ("When it appears that damages will adequately compensate a complainant, and that the defendant is solvent and able to respond in damages, a motion for a preliminary injunction will be denied.").

- *Palmer v. Mills*, 57 F. 221 (C.C.D. Conn. 1893), denied an injunction to a patent owner who had "already granted to their only other competitor a license to make and use machines embodying the improvements claimed in said patents." *Id.* at 222. The court concluded that "[t]here can be no irreparable damage, in such a case, where the value of the royalty can be ascertained, provided the responsibility of defendants is guarantied." *Id.*

- *Brick v. Staten Island Railway Co.*, 25 F. 553 (C.C.S.D.N.Y. 1885), noted that "[c]ourts of equity have frequently refused to retain jurisdiction in these cases where the patent has expired, or is about to expire, or where the complainant is guilty of laches in asserting his rights, or where it can be ascertained, in the particular case under consideration, that a complete and adequate remedy exists at law; for instance, where the sole object of the suit is to recover license fees or royalties." *Id.* at 554.

- *Howe v. Morton*, 12 F. Cas. 663 (C.C.D. Mass 1860), denied an injunction to a prevailing patent owner, emphasizing that he "is not himself a manufacturer; he sells the right to others to make his machine; and there can be little difficulty in determining what will be an indemnity to him for the use of his patented invention in the manufacture of machines by the defendants." *Id.* at 670.

- *Greenwood v. Bracher*, 1 F. 856 (C.C.D.N.J. 1880), relied in part on "the fact that the complainant does not use his patent as a monopoly, but grants licenses to others to use it" to hold that "the injunction will be withheld." *Id.* at 861.

- *Sanders v. Logan*, 21 F. Cas. 321 (C.C.W.D. Pa. 1861), held that "neither an injunction nor an account is necessary or proper" because it was the patent owner's "interest that all mills should adopt and use it, provided he is paid the price of a license." *Id.* at 322-23. It concluded that "[s]uch price or value of a license is the true measure of the 'actual damage' suffered, and of the remedy which the patentee can obtain, or has a right to claim in equity." *Id.* at 323.

- *National Hat-Pouncing Machine Co. v. Hedden*, 29 F. 147 (D.N.J. 1886), denied a patent injunction, finding that "[i]t does not satisfactorily appear that irreparable damage will be suffered by the complainant in waiting for a final decree in either case; and as the complainant does not use the patents as a monopoly, but sells licenses to others to use them for a fixed royalty, there will be little difficulty in ascertaining whatever damages it may be entitled to if it finally prevails." *Id.* at 149.

- *New York Grape Sugar Co. v. Am. Grape Sugar Co.*, 10 F. 835 (C.C.N.D.N.Y. 1882), concluded that "the injunction must be denied" because "[t]he complainant has recently purchased the patents and proposes to use them, not by manufacturing under

them, but by selling licenses to others." *Id.* at 837. The court emphasized that "[i]rreparable damage is an indispensable element upon an application for a provisional injunction." *Id.*

- *Kane v. Huggins Cracker & Candy Co.*, 44 F. 287 (W.D. Mo. 1890), denied a patent injunction because "[t]he complainant is not a manufacturer, but simply holds this patent for the sale of licenses." *Id.* at 292.

In other decisions denying an injunction to a prevailing patent owner during this era, courts relied on the fact that the claimed invention was only a small part of the accused product and thus an injunction would be a disproportionate remedy:

- *Stainthorp v. Humiston*, 22 F. Cas. 1035 (C.C.N.D.N.Y. 1862), held that because "the defendant's machines contain other valuable improvements which are not patented to Stainthorp, an injunction might operate to the prejudice of the actual rights of the defendant without being as useful to the complainants as an account of profits, and security for their payment to the complainants, under the final decree in this case." *Id.*

- *New York Grape Sugar Co. v. Am. Grape Sugar Co.*, 10 F. 835, 837 (C.C.N.D.N.Y. 1882), which denied an injunction to a patent owner in view of the plaintiff's licensing business model, *see supra*, also emphasized the substantial burden on the defendant of removing the patented feature from the accused products:

  > On the other hand, the defendants have gradually created and developed an extensive market for glucose and grape sugar; so large that if their works were stopped the demand could not be well supplied, and serious inconvenience would result. They have not only invested a large capital in their manufacturing business, but they employ a great number of workmen, many of whom would be temporarily cut adrift if an injunction were granted. It is difficult to see how the defendants could remove the patented apparatus without substantially dismantling and reorganizing their works. Under such circumstances the equitable considerations which appeal to the discretion of the court, and within well-recognized rules should lead to the refusal of a preliminary injunction, cannot be ignored.

- *Forbush v. Bradford*, 9 F. Cas. 422 (C.C.D. Mass. 1858), discussed *supra*, denied an injunction partly on the basis that "[i]n this case, the thing patented is an improvement on a loom. The loom itself is not claimed; but only a particular modification of a loom previously in use." *Id.*

Finally, courts of equity often simply held that a patent injunction would be inequitable and should be denied when the damage that it would inflict on the defendant would grossly exceed any benefit to the patent owner:

- *Electric Smelting & Aluminum Co. v. Carborundum Co.*, 189 F. 710 (C.C.W.D. Pa. 1900), held that "[c]ourts have the power to withhold it (the injunction), and usually will do so, in those cases where by granting the injunction, there seems to be more danger of producing an irreparable injury to the defendant, than of preventing it on the part of the complainant." *Id.* at 711 (citation omitted).

- *McCrary v. Pa. Canal Co.*, 5 F. 367 (C.C.E.D. Pa. 1880), found that "[t]he allegation of infringement is supported by satisfactory evidence, which the respondent's proofs have not overthrown, and none of the prior patents exhibited cover the complainant's invention"—but nevertheless rule that "inasmuch as the allowance of an injunction would cause much greater injury to the respondent than benefit to the complainant, the decree will be only for an account." *Id.* at 368.

- *Dorsey Harvester Revolving Rake Co v. Marsh*, 7 F. Cas. 939 (C.C.E.D. Pa. 1873), suspended an injunction in favor of payment of a bond because "[t]he defendants have an extensive establishment, and a large capital invested in it for the manufacture of machines . . . . A sudden stoppage of it would be disastrous to them, and would not benefit the complainant." *Id.* at 945.

- *Ballard v. City of Pittsburgh*, 12 F. 783 (C.C.W.D. Pa. 1882), held that because it "would only operate injuriously upon the public, without benefiting the complainants, an injunction will not be granted." *Id.* at 786.

By the early twentieth century, the equity jurisprudence regarding patent owners that do not have a market to protect and that broadly license their inventions was sufficiently clear and established that a respected treatise[13] could pronounce that "an injunction is not the proper remedy to enforce the payment of money"

[13] James L. High, A Treatise on the Law of Injunctions (4th ed. 1905). The Supreme Court has relied on the High treatise to identify the boundaries of traditional equity. *See, e.g.*, *Trump v. Cook*, 146 S. Ct. 2234, 2250 (2026); *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019); *United States v. Dixon*, 509 U.S. 688, 695 (1993).

in such cases and "the plaintiff will be left to pursuit of his legal remedy:"

> Where, therefore, the plaintiff is not the manufacturer or vendor of the infringing article, but merely licenses his patent for fixed license fee, so that the damages are readily and satisfactorily ascertained, and it further appears that the defendant is abundantly able to respond in damages, relief by injunction will be refused and the plaintiff will be left to the pursuit of his legal remedy. So where the injury to the patentee resulting from the infringement consists, not in the use of the invention, but in depriving him of compensation for such use, the price or value of a license constituting the rule of damages, an injunction is not the proper remedy to enforce payment of the money, since the measure of damages being certain and fixed sum, ample redress may be had at law.[14]

[14] High, *supra* n.13, at § 967, p. 912.

### A. *Continental Paper Bag*, in which the patent owner was granted an injunction to protect its market from infringing alternatives, is not to the contrary.

In *Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405 (1908), the United States Supreme Court upheld an injunction granted to a patent owner that was not practicing the invention claimed in its asserted patent. The Court held that the exclusion of competitors "from the use of the new patent . . . [was] the very essence of the right conferred by the patent, as it is the privilege of any owner of property to use or not use it, without question of motive." *Id.* at 429.

Although the patent owner Eastern Paper Bag Company was not practicing its patent, the injunction that it obtained shielded products that it made from competitive harm created by infringement. Eastern Paper Bag was in the business of making paper bags. It deployed its patent as a blocking patent to stop the use of bag-making machines by a competitor whose output would compete with Eastern Paper Bag's products. Thus although the machine that was claimed in the patent "might have produced better paper bags" than the machines that the patent owner was using, *see id.* at 428-29, by employing the older machines, Eastern Paper Bag "sav[ed] . . . the expense that would have been involved by changing

the equipment of a factory from one set of machines to another." *Id.* at 429; *see also id.* ("And even if the old machines could have been altered, the expense would have been considerable.").

Thus in *Continental Paper Bag*, it was not mere potential licensees, but "*competitors* [that] were excluded from the use of the new patent" by an injunction. *Id.* (emphasis added); *see also United States v. Winslow*, 227 U.S. 202, 217 (1913) (citing *Continental Paper Bag* for the proposition that "the exclusion of competitors from the use of [the patented invention] is of the very essence of the right conferred by the patents").

*Continental Paper Bag* does not address the situation in which a non-using patent holder has no market to protect and seeks to employ an injunction only as settlement leverage. *See Continental Paper Bag*, 210 U.S. at 430 ("Whether . . . a case cannot arise where, regarding the situation of the parties in view of the public interest, a court of equity might be justified in withholding relief by injunction, we do not decide.").

In support of its ruling, *Continental Paper Bag* cites a series of lower-court decisions that it characterizes as "refin[ing] the right of the patentee" and "holding that, as incident to the right, he is entitled to an injunction, though he had not used his invention." *Id.* at 426

and nn.1 & 2. The cases that *Continental Paper Bag* cites are consistent with principle that an injunction is appropriate for protecting a market in goods or services; none of the cited cases contradict the principle that an injunction should *not* be granted when sought to be used only as settlement leverage.

The bulk of the lower-court decisions that *Continental Paper Bag* cites involve patent owners that clearly *did* have markets to protect that were affected by infringing goods and services. Several of the cases involve blocking patents, as in *Continental Paper Bag* itself;[15] others involve a patent owner that did not practice its claimed

---

[15] *See Crown Cork & Seal Co. of Baltimore City v. Aluminum Stopper Co. of Baltimore* City, 108 F. 845, 848, 868 (4th Cir. 1901) ("[The plaintiff and defendant are] engaged in supplying the market with the bottle-stopping devices;" "[t]he [patent-infringing devices] are adapted to serve the same purpose [as the plaintiff's device]."); *Lamson Consol. Store Serv. Co v. Hillman*, 123 F. 416, 422 (7th Cir. 1903) ("[Patent owner] is the oldest and largest concern engaged in furnishing store-service apparatus. The failure to use [the claimed invention] might support . . . the inference that . . . for commercial reasons [patent owner] prefers to suppress the invention."); *Masseth v. Johnston*, 59 F. 613 (C.C.W.D. Pa. 1894) (the defendant alleged that the patent owner had supplied it inferior goods; the court held that "[t]he failure of [patent owner's product] did not justify the respondent in replacing it with an infringing one"); *Hoe v. Miehle Printing Press & Mfg. Co.*, 141 F. 112, 112-13 (C.C.S.D.N.Y. 1905) ("Although it was alleged that plaintiff had not made machines under the patent, the complainants . . . are printing press manufacturers . . . . The defendant . . . is a printing press manufacturer . . . . The patent relates to a form of printing press.").

invention, but had partnered with an exclusive licensee who did;[16] others concern a patent owner seeking to suppress competition from products that do not practice the claimed invention itself but are alleged to contributorily infringe the patent;[17] and yet others involve patent owners wielding their patents to maintain the resale price of their goods.[18]

---

[16] *See Edison Elec. Light Co. v. Mt. Morris Elec. Light Co.*, 58 F. 572, 575 (2d Cir. 1893) ("[T]he exclusive licensee of the Edison Company, which has made a large pecuniary investment upon its confidence in the strength and validity of the patent, . . . has an imposing equity to protection by the courts, as against a competing infringer."); *Edison Elec. Light Co v. Mount Morris Elec. Light Co.*, 57 F. 642, 645 (C.C.S.D.N.Y. 1893) ("Every one of the [defendant] manufacturing corporations [are] the competitors of the Edison companies."); *Fuller v. Berger*, 120 F. 274 (7th Cir. 1903) ("While th[e] company was the owner [of the patent], the only practical use to which the [claimed invention was] put was to guard gambling machines, made and controlled by the company.").

[17] *See Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co.*, 77 F. 288, 297 (6th Cir. 1896) ("It is the knowledge that the staples made and sold by defendants [that] . . . constitutes contributory infringement."); *Rupp & Wittgenfeld Co. v. Elliott*, 131 F. 730 (6th Cir. 1904) ("Machines according to these patents are made by the complainant the Elliott Machine Company" and are license for "use only in connection, with staple wire purchased from the patentee."); *Brodrick Copygraph Co. of New Jersey v. Mayhew*, 131 F. 92 (C.C.E.D. Wis. 1904) ("[Plaintiffs own patents] under which they manufacture . . . . machines [that] are sold with the restriction that they are 'licensed to be used only with [plaintiff's] stencil paper and ink;" "the defendant is charged as a contributory infringer.").

[18] *See Victor Talking Mach. Co. v. The Fair*, 123 F. 424 (7th Cir. 1903) ("[The patent owners] made the gramophones in question [and]

All these cases are consistent with principle than an injunction is an appropriate remedy to protect against competitive harm. It is apparent in each of these cases that the patent owner did actually want the injunction itself—that by stopping the sale of infringing goods, it would increase its own sales and profits. In none of these cases do the facts suggest that an injunction, once granted to the patent owner, would be sold back to the defendant for a monetary settlement.

One additional case cited by *Continental Paper Bag* approves the use of an injunction to avoid the need for repeated actions for damages.[19] Other cited cases affirm the patent owner's right to market exclusivity in the face of antitrust challenges.[20] And yet

affixed to each a notice [restricting its resale price];" "[It is alleged that the defendant] advertised them for sale . . . at the cut price."); *Hartman v. John D. Park & Sons Co.*, 145 F. 358, 259, 365 (C.C.E.D. Ky. 1906), *rev'd*, *John D. Park & Sons Co. v. Hartman*, 153 F. 24 (6th Cir. 1907) ("[The] complainant is the manufacturer and seller amongst other medicines;" holding that it "may limit the license to resell to such persons as he may designate and at certain prices.").

[19] *See Wyckoff v. Wagner Typewriter Co.*, 88 F. 515, 516 (C.C.S.D.N.Y. 1898) ("[It is alleged] that defendant, if not enjoined, will continue to infringe the patent, leaving plaintiff to the unsatisfactory remedy of repeated actions for damages.").

[20] *See U.S. Consol. Seeded Raisin Co. v. Griffin & Skelley Co.*, 126 F. 364 (9th Cir. 1903); *Rubber Tire Wheel Co. v. Milwaukee Rubber Works Co.*, 154 F. 358, 359 (7th Cir. 1907); *Indiana Mfg. Co. v. J. I.*

others generically uphold the patent owner's right of non-use but do not specify the conditions for granting an injunction[21]—or they award damages instead.[22]

Again, none of the 33 cases cited by *Continental Paper Bag* approves the award of an injunction to a patent owner that had no

---

*Case Threshing Mach. Co.*, 154 F. 365, 370-71 (7th Cir. 1907); *Bonsack Mach. Co. v. Smith*, 70 F. 383, 385 (C.C.W.D.N.C. 1895); *Columbia Wire Co. v. Freeman Wire Co.*, 71 F. 302, 306 (C.C.E.D. Mo. 1895).

[21] *See Pitts v. Wemple*, 19 F. Cas. 762, 764 (C.C.N.D. Ill. 1855) (noting that non-use may indicate that the claimed invention is inoperative); *Wirt v. Hicks*, 46 F. 71, 72 (C.C.S.D.N.Y. 1891); *White v. Peerless Rubber Mfg. Co.*, 111 F. 190, 191 (C.C.W.D. Pa. 1901), *rev'd*, *Peerless Rubber Mfg. Co v. White*, 118 F. 827 (3d Cir. 1902); *National Automatic Weighing Mach Co v. Daab*, 136 F. 891, 895 (C.C.D.N.J. 1905); *Broadnax v. Central Stock-Yard & Transit Co.*, 4 F. 214, 216-17 (C.C.D.N.J. 1880).

[22] *See Carr v. Rice*, 5 F. Cas. 140, 145-46 (C.C.S.D.N.Y. 1856); *Wintermute v. Redington*, 30 F. Cas. 367, 369 (C.C.N.D. Ohio 1856); *Ransom v. City of New York*, 20 F. Cas. 286, 296 (C.C.S.D.N.Y. 1856), *rev'd*, *City of New York v. Ransom*, 64 U.S. 487 (1859); *Whitney v. Emmett*, 29 F. Cas. 1074, 1984 (C.C.E.D. Pa. 1831).

Other cases that are cited in *Continental Paper Bag* do not appear to address questions of patent non-use and exclusivity. *See Railway Appliances Co v. Munroe*, 147 F. 241 (7th Cir. 1906) (verdict challenged on novelty and infringement grounds); *O.H. Jewell Filter Co. v. Jackson*, 140 F. 340 (8th Cir. 1905) (affirming dismissal of complaint for non-infringement); *U.S. Fastener Co. v. Bradley*, 149 F. 222, 224 (2d Cir. 1906) (addressing whether the claimed invention is inoperative and lacks utility); *In re Brosnahan*, 18 F. 62, 64 (C.C.W.D. Mo. 1883) (holding that a patent does not immunize a patented product against state regulation).

market to protect and sought the injunction simply to increase its negotiating leverage with the defendant. The only nineteenth and early-twentieth-century cases that *do* address this question disapprove of the use of a patent injunction in this way.

The cases that Collision cites in its opening brief (at pp. 42 & 54) are distinguishable; they all involve patent owners that practiced their claimed inventions.[23]

Finally, in the years following *Continental Paper Bag*, the Courts of Appeals continued to affirm that an injunction is unavailable to a patent owner that does not have a market to protect and seeks coercive relief only to "strengthen its position in negotiating a settlement." *See Landis Tool Co v. Ingle*, 286 F. 5, 6-7 (3d Cir. 1923) ("[The patent owner] is not a competitor of the defendants, nor are the defendants competitors of his, in the manufacture of boring

[23] *See Stearns-Roger Mfg. Co. v. Brown*, 114 F. 939, 945 (8th Cir. 1902) (addressing whether the plaintiff failed to mark its products); *Allington & Curtis Mfg. Co. v. Booth*, 78 F. 878, 879 (2d Cir. 1897) ("[T]he complainants derived their profit exclusively from the manufacture and sale of the patented machines."); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 831 F. Supp. 1354, 1385 (N.D. Ill. 1993) (addressing the patent owner's lost profits).

machines. Therefore it would seem that enforcement of the injunction would cause much greater injury to the defendants than benefit to the complainant."); *American Safety Device Co. v. Kurland Chem. Co.*, 68 F.2d 734 (2d Cir. 1934) ("Assuming that [an injunction] would be proper . . . where there was danger of irreparable injury or a multiplicity of suits . . . , there is nothing in this case to warrant it. If [the defendant's] use of these machines causes the plaintiff any damage, a recovery of such damage in terms of money will be sufficient recompense."); *Nerney v. New York, N. H. & H. R. Co.*, 83 F.2d 409, 411 (2d Cir. 1936) ("[When] the only real advantage to a plaintiff in granting the injunction would be to strengthen its position in negotiating a settlement, an injunction should not issue."); *Foster v. Am. Mach. & Foundry* Co., 492 F.2d 1317, 1319, 1324 (2d Cir. 1974) ("[The patent owner] has never engaged in any manufacturing or other business connected with the patent in suit;" "an injunction would be an inappropriate remedy in this case;" "[an injunction] is an equitable remedy to be determined by the circumstances. It is not intended as a club to be wielded by a patentee to enhance his negotiating stance.").

### III. Collision has adequate remedies for future infringement that obviate the need for an injunction.

As Samsung notes, a lump-sum award or ongoing royalty are available and adequate to compensate Collision for future infringement. *See* Samsung Brief at 43. Collision, however, contends that any remedy that is deemed "equitable"—or that was developed after 1789—cannot be considered when assessing the adequacy of alternatives to an injunction. *See* Collision Opening Brief at 40, 53.

Amici simply note in response that Collision's proposed restriction cannot be reconciled with courts' historic practice of refusing a patent injunction when an adequate alternative remedy is available in the form of an accounting—an *equitable* remedy that American courts began employing in the nineteenth century. *See, e.g.*, *McCrary v. Pa. Canal Co.*, 5 F. 367, 368 (C.C.E.D. Pa. 1880) ("[I]nasmuch as the allowance of an injunction would cause much greater injury to the respondent than benefit to the complainant, the decree will be only for an account."); *Stainthorp v. Humiston*, 22 F. Cas. 1035 (C.C.N.D.N.Y. 1862) ("[A]n injunction might operate to the prejudice of the actual rights of the defendant without being as useful to the complainants as an account of profits."); *New York Grape Sugar Co. v. Am. Grape Sugar Co.*, 10 F. 835, 837 (C.C.N.D.N.Y. 1882)

(denying an injunction in favor of "an accounting for profits"); *Greenwood v. Bracher*, 1 F. 856, 861 (C.C.D.N.J. 1880) (same); *Nerney v. New York, N. H. & H. R. Co.*, 83 F.2d 409, 411 (2d Cir. 1936) ("Where it appears that a much greater injury will be done to the infringer than a benefit to the patentee, the court may, within its equity power, grant an accounting only and deny injunctive relief.").

## IV. Policy arguments against *eBay* lack merit.

One of Collision's amici contends that *eBay*'s application of traditional equitable principles to patent injunctions has "cast an almost inescapable pall over any company seeking to enforce its patents," and that the "inability of startups and small companies to enjoin infringement," in particular, has "diminshe[d] American innovation." USIJ brief at 15, 13 (capitalization omitted).

Such assertions are belied by reality. Amicus CCIA recently reviewed all decisions in U.S. courts on motions for permanent injunctions in patent cases during the seven years preceding 2026.[24] It found that "[f]or practicing entities, which made up the vast majority of injunction requests, courts granted injunctions 94% of the time."[25] In addition, for "[non-practicing entities] with a primary purpose other than asserting patents in litigation"—"including universities, individual inventors, and technology development companies"—"courts granted injunctions 86% of the time."[26]

[24] *See* Much Ado About Injunctions: Redux, PatentProgress, Sept. 12, 2026, available at https://patentprogress.org/2026/09/much-ado-about-injunctions-redux/.

[25] *Id.*

[26] *Id.*

Consistent with data from earlier years,[27] these results confirm that injunctive relief remains broadly available to patent plaintiffs that seek to use it to protect their innovation (rather than only as leverage in settlement negotiations).

In addition, another recent study evaluated "*eBay*'s effect on venture-backed startups," which are "generally regarded as both disproportionately affected by patent protection at the margin and disproportionately responsible for economic growth and job creation."[28] This analysis "collect[ed] detailed data on startups founded in the four years prior to the *eBa*y decision, including data on all funding rounds these firms completed through the end of 2024."[29]

The study's conclusion: "startups in our treatment groups performed just as well as startups in our control [groups]."[30] In particular, the study "[found] no evidence that startups in either the

---

[27] *See id.*

[28] Christian Helmers & Brian Love, Injunctions and Venture Capital: An Empirical Looks at *eBay*'s Effect on Startups," 16 N.Y.U. J. INTELL. PROP. & ENT. L. (forthcoming 2027), at 3, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=7329598.

[29] *Id.*

[30] *Id.* at 44.

IT or medtech industries were more or less likely to fail, to raise an additional round of VC funding, or to conduct a down round [reflecting a decrease in the firm's valuation]."[31] The study's overall findings were "reasonably analogous" to previous "empirical analyses of public company performance post-*eBay*, which likewise generally report an effect that is, if anything, marginally more positive than negative."[32]

Recent empirical analyses thus confirm that application of traditional equitable criteria to the grant of injunctive relief in patent cases has not disrupted the U.S. patent system's fulfillment of its purpose of "promot[ing] the progress of science and useful arts."[33]

---

[31] *Id.*

[32] *Id.* at 45.

[33] United States Constitution, Article I, § 8, Clause 8.

## CONCLUSION

The district court's denial of the motion for an injunction should be affirmed.

Respectfully submitted,

/s/ *Joseph Matal*

Joseph Matal
CLEAR IP, LLC
888 16th St., NW
Suite 300
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amici Curiae*

Dated: September 22, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for amici curiae certifies that this brief:

(1) complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Federal Circuit Rule 29(b) because it contains 6978 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b); and

(2) complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because this document has been prepared using Microsoft Office Word and is set in the Bookman Old Style font in a size equivalent to 14 points or larger.

Dated: September 22, 2026 /s/ *Joseph Matal*